# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

UNION PACIFIC RAILROAD COMPANY,

*Petitioner*,

v.

SURFACE TRANSPORTATION BOARD
and UNITED STATES OF AMERICA,

*Respondents.*

Case No. 25-2919

## UNION PACIFIC'S REPLY SUPPORTING
## MOTION FOR STAY PENDING REVIEW

Raymond A. Atkins
Allison C. Davis
Tobias S. Loss-Eaton
Stephen S. Laudone
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
tlosseaton@sidley.com
(202) 736-8000

*Counsel for Petitioner*
*Union Pacific Railroad Company*

October 16, 2025

# CONTENTS

Table of authorities .................................................................................ii

Introduction...........................................................................................1

Argument...............................................................................................1

I.     The stay motion is not moot, but abeyance is appropriate. ............1

II.    Union Pacific is likely to succeed on the merits. ............................3

      A.    The Board cannot order immediate access without compensation or conditions.....................................................3

      B.    The Board's decision is arbitrary and capricious. ..................8

III.   Union Pacific will suffer irreparable harm......................................9

IV.   The remaining factors favor a stay................................................13

Conclusion ...........................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Commuter Rail Division v. Union Pacific,*
No. 1:25-cv-2439, 2025 WL 1787514
(N.D. Ill. June 27, 2025) .................................................................. 12

*Deerbrook Pavilion, LLC v. Shalala,*
235 F.3d 1100 (8th Cir. 2000) ........................................................ 2

*Fed. Power Comm'n v. Texaco Inc.,*
417 U.S. 380 (1974) ......................................................................... 6

*Iowa Utilities Bd. v. FCC,*
109 F.3d 418 (8th Cir. 1996) ......................................................... 12

*Knick v. Twp. of Scott,*
588 U.S. 180 (2019) ..................................................................... 4, 5

*Liu v. SEC,*
591 U.S. 71 (2020) ........................................................................... 4

*McGehee v. Nebraska Dep't of Corr. Servs.,*
987 F.3d 785 (8th Cir. 2021) .......................................................... 2

*MOAC Mall Holdings LLC v. Transform Holdco LLC,*
598 U.S. 288 (2023) ......................................................................... 2

*S. Pac. Transp. v. ICC,*
736 F.2d 708 (D.C. Cir. 1984) ........................................................ 4

*SEC v. Chenery Corp.,*
318 U.S. 80 (1943) ....................................................................... 7, 9

*United States v. Wynn,*
827 F.3d 778 (8th Cir. 2016) .......................................................... 5

*Wooden v. United States,*
595 U.S. 360 (2022) ......................................................................... 4

**Statute**

49 U.S.C. § 11102(a) ............................................................ 3, 5, 7

**Administrative Decisions**

*Navajo Transitional Energy Co., LLC—*
  *Ex Parte Pet. for Emerg. Svc. Order*,
  No. R 42178, 2023 WL 4166666
  (S.T.B. served June 23, 2023) ............................................ 10

*Wisc. Cent., Ltd.—Pet. for Decl. Order*,
  No. FD 36397, 2024 WL 339901
  (S.T.B. served Jan. 29, 2024) ............................................ 11

**Other Authorities**

Black's Law Dictionary 1521 (4th ed. 1951) ............................ 5

Fed. R. App. P. 18(a)(2) .......................................................... 3

**INTRODUCTION**

The Court should hold Union Pacific's stay motion in abeyance. Although the agency's September 30 interim order did not moot the motion—because it granted narrower and shorter-term relief than Union Pacific seeks here—the Board may still grant broader interim relief. And any additional Board action on this issue will bear on the extent of the harm Union Pacific will suffer absent a stay. Abeyance is thus proper until the Board takes further action on interim conditions.

Alternatively, the Court should grant the stay because—even with the interim order—Union Pacific is likely to succeed on the merits and will suffer irreparable harm. Metra's contrary arguments lack merit, and many of them violate the settled rule that agency action can be affirmed only on the grounds articulated in the agency's decision.

**ARGUMENT**

## I. The stay motion is not moot, but abeyance is appropriate.

The Board and Metra claim the stay motion is moot because the Board has now "imposed, on a temporary basis, interim indemnification terms governing Metra's use of UP's trackage." STB Opp. 3. That is incorrect.

A claim "becomes moot only when it is impossible for a court to grant any effectual relief whatever." *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 295 (2023). A claim is *not* moot if the Court can still "effectuate a partial remedy," *McGehee v. Nebraska Dep't of Corr. Servs.*, 987 F.3d 785, 787 (8th Cir. 2021)—if "some form of meaningful relief is possible," *Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100, 1103 (8th Cir. 2000).

The Court can provide effective relief because the interim order is narrower in scope and shorter in duration than the relief Union Pacific's motion requests. The motion seeks to stay the Board's entire trackage-rights order pending judicial review. The interim order explicitly denied that relief. *See* STB Opp. Ex. 2 at 3–4 & n.2. Instead, acting on the eve of a government shutdown, the agency temporarily imposed interim conditions "until the Board has had an opportunity to consider any response filed by Metra and make a further determination on the appropriate interim terms going forward based on a more fully developed record." *Id.* at 3. In duration, then, the order is like an administrative stay, not a stay pending appeal. And in substance, it is narrower than either. The motion is not moot.

Likewise, the motion complies with the requirement to show "that, a motion having been made [before the agency], the agency denied the motion or failed to afford the relief requested."  Fed. R. App. P. 18(a)(2); *contra* STB Opp. 1; Metra Opp. 9–10.  As just explained, the interim order failed to afford all the relief Union Pacific requested.  It provided narrower, shorter-term relief—and denied the relief Union Pacific seeks here.

Still, the interim order suggests the Board may ultimately grant the primary relief Union Pacific requested below:  Interim indemnity and liability terms to govern pending final terms.  Whether the Board readopts the same terms for the whole interim period—or replaces them with other terms, or demands further negotiations—will be relevant to the full extent of the harms Union Pacific will suffer absent a stay.  The Court should thus hold Union Pacific's stay motion in abeyance pending further Board action on the interim-relief request.

## II.   Union Pacific is likely to succeed on the merits.

### A.   The Board cannot order immediate access without compensation or conditions.

1.   Compensation must "be paid or adequately secured before" trackage rights are used.  49 U.S.C. § 11102(a).  And such rights are a

constitutional taking, for which the "right to full compensation arises" immediately. *Knick v. Twp. of Scott*, 588 U.S. 180, 190 (2019). The statute must therefore be read to require advance or contemporaneous compensation. Mot. 13–15.

Metra responds by parroting the agency's conclusion that compensation is "adequately secured" by an agency "pledge" to set compensation later. Metra Opp. 13–14. But Metra does not dispute that its interpretation robs this language of any effect. Mot. 16. If compensation could be "secured before" by a rote promise to do it after, this sentence would have no function. The Board's decision thus violates the "cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute." *Liu v. SEC*, 591 U.S. 71, 89 (2020).

Metra's "four decades of judicial and agency precedent" (at 14) boils down to a single sentence in a decades-old out-of-circuit *per curiam* with zero reasoning. *See S. Pac. Transp. v. ICC*, 736 F.2d 708, 723 (D.C. Cir. 1984). This *ipse dixit* lacks persuasive force—especially coming from "a 'bygone era' characterized by a more freewheeling approach to statutory construction." *Wooden v. United States*, 595 U.S. 360, 394 (2022) (Gorsuch, J., concurring in the judgment).

Metra's appeal to ordinary meaning (at 13–14) also fails. For one thing, Metra has snipped the middle of a definition that supports Union Pacific's position.[1] In any event, "[t]he meaning of words depends on their context," *United States v. Wynn*, 827 F.3d 778, 785 n.6 (8th Cir. 2016), and the context here falls under "the principle[s] controlling compensation in condemnation proceedings," 49 U.S.C. § 11102(a). Metra does not try to show that "we'll deal with payment later" is adequate security in the condemnation context.

Nor can Metra avoid the constitutional problem. Under *Knick*, a "procedure that will eventually result in just compensation"—what the Board "pledged" here—is not enough. 588 U.S. at 190–91. Metra emphasizes *Knick's* observation that, "as a *practical* matter," a taking may proceed without "contemporaneous compensation." Metra Opp. 15 (emphasis altered). But that is because later compensation is an adequate legal remedy, so "equitable relief is generally unavailable" in such cases. 588 U.S. at 201–02. That equitable principle, however, does not avoid a Fifth

---

[1] *See* Black's Law Dictionary 1521 (4th ed. 1951) ("to give security; to assure of payment, performance, or indemnity; to guaranty or make certain the payment of the debt or discharge of an obligation … one 'secures' his creditor by giving him a lien, mortgage, pledge or other security to be used in case the debtor fails to make payment").

Amendment violation: "A later payment of compensation may remedy the constitutional violation that occurred at the time of the taking, but that does not mean the violation never took place." *Id.* at 193. The only way to "prevent[] the violation from occurring" is to provide compensation in advance. *Id.* at 201. In turn, reading § 11102 to comply with the Fifth Amendment means requiring compensation *before* trackage rights take effect.

Because the Board unlawfully failed to address compensation before giving Metra an indefinite right to occupy Union Pacific's private property, Union Pacific is likely to succeed on the merits.

2. The Board also violated the statute by giving Metra immediate trackage rights without setting any non-compensation terms. *See* Mot. 14–15. In response, Metra says the statute mandates only that "compensation," not "conditions," be set in advance. Metra Opp. 12–13.

This response is improper. A court "cannot accept appellate counsel's post hoc rationalizations for agency action; for an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.*, 417 U.S. 380, 397 (1974). And the Board's trackage-rights decision nowhere articulates

Metra's theory. Rather, the Board believed that it *legally cannot* set conditions—even on an interim basis and even while making its order effective immediately—until the parties have tried negotiating for some unclear duration. *See* Mot. Ex. A at 32 n.65. Metra does not defend that legal error. Because agency action "may not stand if the agency has misconceived the law," *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943), Union Pacific is likely to prevail on this ground too.

Metra's argument also fails on its own terms. Section 11102(a) explicitly contemplates that the Board will, if necessary, "establish *conditions and compensation* for use of the facilities." 49 U.S.C. § 11102(a) (emphasis added). Metra does not dispute that, if compensation must be set in advance, then setting at least some conditions is also necessary to determine what is being compensated. *See* Mot. 14; Metra Opp. 13. Nor does Metra offer any reason why Congress would have empowered the Board to order one railroad onto another railroad's tracks with immediate effect and *no* operational terms.

That the statute separately emphasizes the need to address compensation in advance simply reflects that compensation is a constitutional requirement in "condemnation proceedings." *See id.* Likewise,

from a purely practical perspective, providing backwards-looking compensation is possible, so it makes sense for Congress to expressly foreclose that possibility.  But operational conditions *cannot* be set retroactively, so Congress had no similar reason to underscore that they must be set in advance.

### B.    The Board's decision is arbitrary and capricious.

Metra says the Board's decision cannot be held arbitrary and capricious because the "lack of liability and indemnity conditions … is now resolved, leaving nothing of substance to address."  Metra Opp. 15.  But again, the Board adopted interim terms on these topics only until it can take further action.  *Supra* § I.  In any event, the motion explained that "[t]he Board's failure to adopt interim terms was *especially* unreasonable as to indemnity"—not that it was limited to that subject.  Mot. 19 (emphasis added); *see id.* at 18.

Metra next says the Board "was prepared at all times to address interim conditions upon request," which supposedly struck "a sensible balance" between the statute's preference for "private negotiation" and the supposed need for "immediate trackage rights."  Metra Opp. 15–16.

Again, Metra is inventing rationales the Board did not offer. The agency did not say immediate trackage rights were needed, much less why.

Metra tries to cobble together such an explanation from snippets of the Board's reasoning on a separate issue. *Compare id.* at 16, *with* Mot. Ex. A at 27–29. But the notion that "immediate rights were (and remain) necessary because otherwise UP could attempt to upend service at any time," Metra Opp. 16, does not exist in the Board's decision. The agency simply didn't explain why its order must take effect immediately, even with no governing terms. Metra cannot do so now. *Chenery*, 318 U.S. at 94.

## III. Union Pacific will suffer irreparable harm.

On irreparable harm, Metra's lead response is again that any "concerns about indemnity and liability are now resolved." Metra Opp. 17. But again, those concerns are "resolved" only until the government shutdown ends and Metra has a chance to insist that the Board readjust the terms in its favor. At most, then, this would be a reason to hold the motion in abeyance, not deny it.

In any event, Union Pacific's harms are broader. As the motion explained, Union Pacific will be irreparably harmed by having to

negotiate other interim terms and all final terms while Metra already has what it wants, and thus has no incentive to compromise. Calling this a "level playing field"—when Metra just secured a statutory trump card that overrides Union Pacific's property rights—blinks reality. *Contra* Metra Opp. 18. To confirm as much, the Court need look no further than Metra's furious backpedaling from the interim indemnity terms that *Metra itself* recently urged the Board to adopt. *See* Mot. 22.

Regardless, whether Union Pacific or Metra should have a stronger bargaining position is ultimately a merits question, since it depends on whether the Board properly granted Metra trackage rights. For the reasons above, the answer is no.

Metra acknowledges this Court's precedents recognizing a distorted bargaining environment as irreparable harm, but says "the distortion in negotiation positions was significant" in those cases "because it would lead to real-world transactions that would be impossible to unwind." Metra Opp. 18–19. But the same is true here. Given the agency's usual practice, anything Union Pacific negotiates with (or just offers to) Metra—even temporarily—will become the baseline for indefinite Board-imposed conditions. *Cf. Navajo Transitional Energy Co., LLC—Ex Parte*

*Pet. for Emerg. Svc. Order*, No. R 42178, 2023 WL 4166666, at *7 (S.T.B. served June 23, 2023) (emphasizing that a railroad previously "was willing to enter into a contract" providing a particular level of service); *Wisc. Cent., Ltd.—Pet. for Decl. Order*, No. FD 36397, 2024 WL 339901, at *9 (S.T.B. served Jan. 29, 2024) (imposing costs on a railroad that it had "voluntarily assumed" in the past). And in the meantime, the risks and burdens of not having terms in place fall disproportionately on Union Pacific.

On that topic, Metra says "UP's concerns reduce to commercial issues" that "can easily be remedied either by additional STB action or future damages." Metra Opp. 20. But this breezy assertion neatly captures the vacuum the Board has created. *See* Mot. 23. Metra apparently means that, if Union Pacific suffers economic harm because of Metra's operations, it can ask the Board to set interim terms on the topic at issue. But even setting aside that the agency is currently incapacitated by a government shutdown, any Board-imposed interim terms can govern only prospectively. From whom can Union Pacific secure "future damages" for such completed harms, and on what causes of action? It is far from clear that any remedies exist. And unrecoverable economic loss is

irreparable harm.  *See Iowa Utilities Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996).

Nor are Union Pacific's irreparable harms like the harms Metra unsuccessfully asserted in the district-court action.  *Contra* Metra Opp. 17–18 n.6.  There, Metra threatened to stop operating unless it received clarity on whether the COE was valid—"a self-inflicted wound."  *CRD v. Union Pac.*, No. 1:25-cv-2439, 2025 WL 1787514, at *6–7 (N.D. Ill. June 27, 2025).  Here, the problem is the opposite:  Union Pacific *must* keep hosting Metra even though the Board's order provides no guidance on its rights or obligations.  *See* Mot. 22–23.

Finally, Metra says a stay would "create uncertainty" because it is unclear whether, with the Board's order stayed, the COE would again govern Metra's operations.  Metra claims that "it has preexisting contractual rights to use the UP Lines," which the COE supposedly violates.  Metra Opp. 21.  But as Metra notes (at 5 n.2), the parties are already litigating the COE's validity elsewhere.  So denying a stay will not obviate the need to decide that dispute or avoid the attendant uncertainty.  And again, there is no "statutory incentive to progress toward a bilateral agreement"—having already gotten what it wants, Metra has refused to

negotiate in good faith, abandoning its own positions from just weeks prior. *Contra* Metra Opp. 20.

A stay will avoid these harms by restoring the July 1–September 3 status quo, under which Metra operated without interruption.

## IV. The remaining factors favor a stay.

On the remaining factors, Metra's arguments boil down to this: It is important that Metra keep operating. But again, Union Pacific committed not to exclude Metra while this dispute plays out. And it has honored that promise: After the PSA expired on June 30, Union Pacific did nothing to impair Metra's operations, even though Metra disputed the COE's validity and refused to pay what it owes thereunder. Simply put, a stay will not lead to Metra's service being interrupted. And denying a stay would violate the strong public interest in ensuring that government agencies follow the law. *See* Mot. 24.

## CONCLUSION

The Court should hold the stay motion in abeyance pending further Board action. Alternatively, the Court should grant the stay.

October 16, 2025

/s/ *Tobias S. Loss-Eaton*
Raymond A. Atkins
Allison C. Davis
Tobias S. Loss-Eaton
Stephen S. Laudone
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
tlosseaton@sidley.com
(202) 736-8000

*Counsel for Petitioner*

## CERTIFICATE OF COMPLIANCE

1.     This motion complies with Federal Rule of Appellate Procedure 27(d)(2)(A)'s type-volume limitation because it contains 2,587 words (as determined by the Microsoft Word word-processing system used to prepare it).

2.     This motion complies with Rule 27(d)(1)(E)'s typeface and type-style requirements because it has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

## CERTIFICATE OF SERVICE

On October 16, 2025, I caused a copy of the foregoing document to be filed through the Court's electronic filing system, which will serve copies on all registered counsel.

*/s/ Tobias S. Loss-Eaton*
Tobias S. Loss-Eaton

*Counsel for Petitioner*