# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

UNION PACIFIC RAILROAD COMPANY,

*Petitioner*,

v.

SURFACE TRANSPORTATION BOARD
and UNITED STATES OF AMERICA,

*Respondents,*

COMMUTER RAIL DIVISION OF THE
REGIONAL TRANSPORTATION AUTHORITY,
doing business as METRA,

*Intervenor.*

Case No. 25-2919

## UNION PACIFIC'S RESPONSE IN OPPOSITION
## TO RESPONDENTS' AND METRA'S ABEYANCE MOTIONS

Raymond A. Atkins
Allison C. Davis
Tobias S. Loss-Eaton
Stephen S. Laudone
Brooke B. Boyd
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
tlosseaton@sidley.com
(202) 736-8000

December 15, 2025

*Counsel for Petitioner*

# TABLE OF CONTENTS

Table of authorities ............................................................................ii

Introduction and background.................................................................1

Argument................................................................................................5

I.    This appeal addresses a distinct, threshold issue that will require resolution no matter what.........................................5

II.   It is far from clear that a second Board decision is coming any time soon....................................................................10

III.  Still more delay would prejudice Union Pacific's rights. ..............14

Conclusion ...........................................................................................17

Certificate of compliance

Certificate of service

Exhibit A:  Letter from J. Milano to L. Stark (Nov. 21, 2025) (redacted)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cedar Point Nursery v. Hassid,*
    594 U.S. 139 (2021).................................................................................. 14

*CSX Transp., Inc. v. STB,*
    774 F.3d 25 (D.C. Cir. 2014) ................................................................ 9

*Firearms Regul. Accountability Coal., Inc. v. Garland,*
    112 F.4th 507 (8th Cir. 2024) ............................................................. 9

*Knick v. Twp. of Scott,*
    588 U.S. 180 (2019).......................................................................... 15

*Landis v. North American Co.,*
    299 U.S. 248 (1936).................................................................... 14, 16

*Metra v. Union Pac. R.R.,*
    No. 1:25-cv-2439, 2025 WL 1787514 (N.D. Ill. June 27, 2025).......... 16

*Pub. Water Supply Dist. No. 10 v. City of Peculiar,*
    345 F.3d 570 (8th Cir. 2003)........................................................... 8, 9

*Riffin v. STB,*
    No. 17-1161, 2018 WL 1902521 (D.C. Cir. Jan. 12, 2018) ................. 8

*Union Pac. R.R. v. CTA,*
    647 F.3d 675 (7th Cir. 2011)............................................................ 16

**Statute**

49 U.S.C. § 11102(a) ................................................................. 5, 6, 14, 15

**Other Authorities**

Mot. to Dismiss or Hold in Abeyance, *Kan. City S. Ry. v.*
    *STB*, No. 16-1308 (D.C. Cir. filed Oct. 21, 2016) (Doc.
    #1642297) ........................................................................................ 13

Status Report, *Kan. City S. Ry. v. STB*, No. 16-1308
    (D.C. Cir. filed Nov. 24, 2025) (Doc. #2147017) ................................. 13

Appellate Case: 25-2919    Page: 3    Date Filed: 12/15/2025    Entry ID: 5588439

## INTRODUCTION AND BACKGROUND

The Court should deny Respondents' and Metra's motions to hold this case in abeyance. The Court recently declined to delay briefing in this case on the same basis, and these motions offer no reason to reverse course. The Court should retain the briefing schedule that it entered just two weeks ago, enabling a timely decision on the distinct threshold question that will require resolution no matter what: Whether Metra has *any* right to use Union Pacific's private rail lines without its consent.

This case concerns the validity of the Surface Transportation Board's September 3, 2025 order granting Metra's application for terminal trackage rights over three Union Pacific–owned rail lines in the greater Chicago area. For many years, Metra's commuter trains operated on these Union Pacific lines under a written contract between the two railroads. Though that contract expired on June 30, 2025, Metra's trains have kept running without interruption—Union Pacific has no desire to interrupt commuter rail service, and it has committed to allowing Metra to keep using its lines while the parties work towards a long-term agreement to govern their relationship.

Despite the absence of any exigency or risk of disruption, Metra sought and secured a Board order under 49 U.S.C. § 11102(a) allowing Metra to use Union Pacific's rail lines without its consent. Under this statute, the Board must first decide whether an applicant is entitled to trackage rights at all under the statutory standards. A separate determination—what terms should govern the exercise of those trackage rights and what compensation the applicant must pay the other railroad—occurs later, and only if the rail carriers cannot agree.

The Board's September 3 order resolved the first question (*whether* Metra has trackage rights) but not the second (if so, *what* terms and compensation should govern). Even though it granted Metra trackage rights with immediate effect—meaning that, right now, Metra is using Union Pacific's lines pursuant to the September 3 order—the agency directed the parties to negotiate terms and compensation for Metra's use of Union Pacific's lines. The Board said that, if the parties ultimately cannot agree, either party can ask the Board to initiate further proceedings to set access terms and compensation. The parties thus began negotiating.

At the same time, Union Pacific petitioned for this Court's review of the September 3 trackage-rights order. It contends that the order is

2

unlawful on multiple grounds and must be vacated. The Court promptly set a briefing schedule requiring the Board to file the certified list of record materials by November 10, with Union Pacific's opening brief due by November 24. Because of the government shutdown, however, the Board sought and was granted a month-and-a-half-long abeyance.

When the shutdown ended, the Board filed a status report asking the Court to keep briefing on hold so the agency could file "a motion to continue holding this appeal in abeyance pending resolution of the outstanding issues before the agency." STB Status Report 2. Metra, which intervened as a respondent, agreed. Metra declared that abeyance would be warranted because it would soon "file a petition asking the STB to proceed to the conditions and compensation for Metra's use of the UP Lines." Metra Response 2. Union Pacific opposed abeyance.

On December 4, the Court rejected the Board's request, entering an order resuming briefing. Undeterred, the Board and Metra have now filed motions renewing the same request for abeyance "pending completion of the underlying Board proceeding," meaning until the agency sets terms and compensation governing Metra's use of Union Pacific's lines under the September 3 order. STB Mot. 2; Metra Mot. 1. Both motions

contend that abeyance is appropriate because the resolved and outstanding issues overlap, a terms-and-compensation proceeding will begin shortly and wrap up quickly, and Union Pacific will suffer no harm from delay.

None of that is true. Any eventual terms-and-conditions appeal would raise highly fact-intensive questions that share no material overlap with the threshold legal questions presented here. What's more, resolving these threshold questions can moot any downstream terms-and-conditions issues, but the converse is not true: Whatever happens before the agency going forward, Union Pacific has no intention of abandoning its challenge to the Board's badly flawed trackage-rights ruling.

For that matter, it is far from clear that the agency is actually about to begin a terms-and-conditions proceeding. But even if it is, all signs suggest that such a proceeding will not take months to resolve, but years. In turn, the most efficient course is for the Court to resolve the threshold trackage-rights question now, which may obviate the need for further, protracted agency proceedings and a complex, fact intensive-appeal therefrom.

Appellate Case: 25-2919    Page: 7    Date Filed: 12/15/2025 Entry ID: 5588439

Delay will also prejudice Union Pacific by allowing Metra to keep using Union Pacific's property without its consent and without paying just compensation for that use, as the Constitution requires. Indeed, one of the grounds for Union Pacific's appeal is that the Board acted unlawfully and unreasonably when it granted Metra *immediate* trackage rights while punting the question of compensation (even interim compensation) to a later proceeding. In doing so, the agency violated the statute's command that "compensation shall be paid or adequately secured before a rail carrier may begin" to exercise terminal trackage rights. 49 U.S.C. § 11102(a). Abeyance would effectively insulate this unlawful action from review by preventing the Court from considering the agency's threshold action until final compensation is set. That would be unjust. The motions should be denied.

## ARGUMENT

### I. This appeal addresses a distinct, threshold issue that will require resolution no matter what.

This appeal addresses the legality of the Board's September 3 order—whether the agency had authority to grant Metra the right to use Union Pacific's lines and whether it properly applied the statutory standards in doing so. That question is separate from, and antecedent to, the

5

questions that a subsequent appeal from any later Board decision would pose—whether any operational terms are reasonable and whether compensation satisfies "the principle[s] controlling compensation in condemnation proceedings." 49 U.S.C. § 11102(a). In short, this appeal asks *whether* Metra has trackage rights at all, and a potential later appeal would ask, *if so*, on what terms?

Because these inquiries are distinct and sequential, proceeding with this appeal does not involve inefficient, piecemeal review. On the contrary, deciding this appeal now is more efficient for everyone.

The threshold questions raised here are fundamentally legal—in particular, they ask what the statute means when it says "main-line tracks for a reasonable distance outside of a terminal" and "in the public interest." *See* 49 U.S.C. § 11102(a). These questions turn on statutory text, history, and precedent, as the agency's own decision shows. *See* STB Mot. Ex. A at 17–18 (analyzing "reasonable distance" based on "cases," and "the statute's text or legislative history"); *id.* at 30 (analyzing "public interest" based on legislative history and case law). Conversely, any future agency proceeding addressing terms and compensation—and, thus, any appeal therefrom—would be highly fact-intensive, involving a

6

massive record and complex economic questions. There is no meaningful overlap.

And the questions presented on this appeal, if resolved in Union Pacific's favor, will moot any further agency proceedings (and any appeal therefrom). Thus, if the Court resolves these threshold legal issues now, it may save judicial resources by avoiding the need for appellate briefing and argument on any terms-and-compensation issues. Conversely, if the Court holds this case in abeyance until a future agency decision, it will need to study all the fact-intensive terms-and-compensation issues— even though they will evaporate if the Court ultimately holds that Metra has no statutory trackage rights to begin with.

Likewise, because a second agency decision may be very far in the future (as explained below), a timely Court decision on the threshold questions may save substantial party and agency time by avoiding or significantly truncating further agency proceedings.

Conversely, nothing that happens during a terms-and-compensation proceeding can moot the threshold questions raised by the September 3 order. In asserting otherwise, the Board and Metra do not actually contend that the legal issues can be mooted. Rather, they suggest that

7

Union Pacific's "continued pursuit of judicial review may well be impacted by the Board's next order resolving the disputed compensation and usage terms." STB Mot. 10. But even if Union Pacific is otherwise "satisfied with the outcome" of a terms-and-compensation proceeding, *see* Metra Mot. 1, it still intends to seek vacatur of the September 3 order. Given the order's significant legal errors, which vastly expand the circumstances in which a passenger carrier can force its way onto a freight railroad's lines, the resulting precedent cannot stand.

Thus, the need for this Court to resolve these questions is "not contingent on future possibilities." *Pub. Water Supply Dist. No. 10 v. City of Peculiar*, 345 F.3d 570, 573 (8th Cir. 2003). The only question is whether the Court will do so now or later—possibly much later. Though abeyance may be proper to await the outcome of another proceeding that will help resolve the pending one, this is not such a case. *See Riffin v. STB*, No. 17-1161, 2018 WL 1902521, at *1 (D.C. Cir. Jan. 12, 2018) (denying abeyance motion because the movant had "not demonstrated that a ruling in [another pending case] … could resolve any of the issues presented in the current petition for review").

8

For similar reasons, the Board is wrong to claim that the issues presented on this appeal are not yet "fit" for resolution under prudential-ripeness principles. *See* STB Mot. 9–11. "Whether a case is 'fit' depends on whether it would benefit from further factual development." *Pub. Water Supply*, 345 F.3d at 573. The Board does not and cannot claim that any further factual development is relevant to the September 3 order's legality. These issues are fit for decision now.

Likewise, the Court should brush aside Metra's half-hearted suggestion that this appeal be dismissed "for lack of finality." Metra Mot. 10 (citing *CSX Transp., Inc. v. STB*, 774 F.3d 25, 30 (D.C. Cir. 2014)). In *CSX*, the agency decided that the railroad possessed "market dominance"—a threshold requirement for it to "examine the reasonableness of a rail carrier's rate"—but not whether any rates were actually unreasonable. 774 F.3d at 27. Thus, the interlocutory decision's sole effect was to impose "an obligation to continue to litigate before the agency." *Id.* at 30. Here, by contrast, the Board's September 3 order gave Metra an *immediate* federal right to use and occupy Union Pacific's property, which it is currently exercising. *See Firearms Regul. Accountability Coal., Inc.*

Appellate Case: 25-2919     Page: 12     Date Filed: 12/15/2025 Entry ID: 5588439

*v. Garland*, 112 F.4th 507, 518 (8th Cir. 2024) (agency action is final if it restricts petitioners' "lawful use of their property").

## II. It is far from clear that a second Board decision is coming any time soon.

The Board and Metra say abeyance is proper "[p]articularly now that Metra has initiated a second phase of the agency proceeding." STB Mot. 8; Metra Mot. 8. That argument has two problems.

*First*, the Board and Metra make it sound like a terms-and-conditions proceeding is already underway before the agency, with a near-term decision "almost certain[]." Metra Mot. 7; *see* STB Mot. 15. But the Board does not yet know all the facts, and Metra is just trying to conjure up a reason to delay this Court's review.

To start, it is not accurate to say that "Metra has initiated a second phase of the agency proceeding." STB Mot. 8. Rather, Metra has *asked* the Board to do so. *See* STB Mot. Ex. D at 6 ("Metra requests that the Board adopt the above-proposed procedural schedule" to resolve terms and compensation issues). In a response filed with the agency today, Union Pacific has opposed that request, explaining that Metra is wrong to assert that the parties "are unable to reach agreement." *See id.* at 1; Metra Mot. 1. Indeed, just a few days before claiming an impasse—and

10

with no intervening developments—Metra wrote to Union Pacific to "expand[] upon the counteroffer Metra proposed on November 14th," to promise "clean and red-lined [draft agreements], accounting for recent subject matter expert discussions, sent back to you by November 26th," and to reiterate that Metra's "goal remains to reach agreement with [Union Pacific] or to identify any remaining disputed issue(s) by the end of December." *See* Ex. A.

In other words, negotiations were progressing. And nothing changed to justify Metra's sudden declaration of impasse—except, of course, that the Board broached the idea of holding this appeal in abeyance. The timing strongly suggests that Metra is claiming to have hit a roadblock in negotiations (even as it promises to "to remain engaged in negotiations," STB Mot. Ex. D at 3) so it can justify its abeyance request in this Court.

Once the Board has a chance to consider this information—and given the agency's desire for the parties to "to undertake a concerted, good faith effort to reach agreement on terms and compensation," STB Mot. Ex. A at 33—the Board may well decline to initiate a second-phase proceeding at this time.

11

*Second*, even if the Board goes forward with a terms-and-conditions proceeding in the near future, it will likely take far longer than the motions suggest. Both motions emphasize that "Metra's proposed schedule calls for completion of the second phase of proceedings within 180 days," Metra Mot. 8—though the Board notably stops short of promising a decision by then, *see* STB Mot. 15. But Union Pacific's position (which the Board has not yet considered) is that, if a terms-and-conditions proceeding is to occur, the agency must first resolve a separate, antecedent issue. As the Board notes, Metra says one of the disputed issues for resolution is the "scope of the trackage rights" that Metra must pay for. *See* STB Mot. 10. The agency cannot determine how much Metra owes, and what terms should govern, until *after* it determines the extent of Metra's rights. The need to resolve this threshold issue could significantly delay the beginning and end of any terms-and-compensation proceeding.

And even setting that issue aside, terms-and-compensation proceedings are infamously complex and slow. Indeed, while both motions point to the D.C. Circuit's abeyance decisions in *Kansas City Southern v. STB*, that case is a cautionary tale. *See* STB Mot. 12; Metra Mot. 10. There, the agency first granted the applicant trackage rights in late 2016.

12

When the other railroad petitioned for review, the agency moved for dismissal or abeyance, arguing (much like here) that review was premature because, "although the Board has determined that BNSF is entitled to trackage rights … the parties have not notified the Board that they have established the operating and compensation terms, and the Board itself has not done so." *See* Mot. to Dismiss or Hold in Abeyance 9, *Kan. City S. Ry. v. STB*, No. 16-1308 (D.C. Cir. filed Oct. 21, 2016) (Doc. #1642297). The D.C. Circuit granted that motion, *and the case is still in abeyance today*. According to the latest status report, the parties' last filing before the agency was on October 7, 2024—over a year ago—and "[n]o further Board or Court action has been taken" since then. *See* Status Report ¶¶ 18–19, *Kan. City S. Ry. v. STB*, No. 16-1308 (D.C. Cir. filed Nov. 24, 2025) (Doc. #2147017).

Thus, based on the example touted in both motions, a terms-and-compensation proceeding takes years, not months. At a minimum, this example shows that Metra's confident predictions about a (not-yet-adopted) 180-day timetable for a (not-yet-initiated) terms-and-compensation proceeding are hopelessly optimistic. In truth, the requested abeyance would be lengthy and indefinite.

13

## III. Still more delay would prejudice Union Pacific's rights.

Finally, further delaying this appeal would prejudice Union Pacific. Metra invokes the Court's inherent power to manage its docket under *Landis v. North American Co.*, 299 U.S. 248 (1936) (cited at Metra Mot. 6–7). But *Landis* emphasizes that a party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay … will work damage to some one else." 299 U.S. at 255. The movants cannot meet that standard.

To start, both motions overlook a basic point: Granting trackage rights—an indefinite, government-authorized occupation of private property—is a Fifth Amendment taking. *See Cedar Point Nursery v. Hassid*, 594 U.S. 139, 150 (2021); 49 U.S.C. § 11102(a) (requiring compensation for trackage rights "under the principle controlling compensation in condemnation proceedings"). Abeyance would prolong a constitutional taking that Union Pacific contends is unlawful to begin with. By itself, that is a form of prejudice that militates against delay.

What's more, Union Pacific has not been justly compensated for this taking. To be sure, both movants emphasize that the Board has "pledged to set compensation in accordance with the statute, with retroactive

14

effect," so Union Pacific *eventually* "will be reimbursed for any shortfall." STB Mot. 13; Metra Mot. 11. But the Fifth Amendment requires "full compensation … at the time of the taking, regardless of post-taking remedies that may be available." *Knick v. Twp. of Scott*, 588 U.S. 180, 190 (2019). Likewise, the trackage-rights statute says "compensation shall be paid or adequately secured *before*" such rights are exercised. 49 U.S.C. § 11102(a) (emphasis added). Thus, abeyance will (greatly) prolong the period during which Union Pacific is suffering a taking without just compensation, while a prompt ruling for Union Pacific on this appeal will end the constitutional injury. Indeed, abeyance will effectively insulate from review the agency's error in giving Metra immediate trackage rights while putting off the question of compensation until (much) later.

Whether or not this harm would qualify as "irreparable" for injunctive-relief purposes, *see* Metra Mot. 11; *Knick*, 588 U.S. at 201, the basic point stands: The Constitution required the Board to ensure compensation before the taking occurred; it did not do so; and the Board is now asking for an open-ended delay before the Court even decides whether the taking was lawful. The resulting prejudice to Union Pacific's rights triggers *Landis*'s requirement of a "clear case of hardship or inequity in

being required to go forward," 299 U.S. at 255, which the movants do not and cannot show.

Both motions also argue that Union Pacific is not harmed by Metra's presence because Union Pacific has committed to voluntarily hosting Metra anyway. STB Mot. 12; Metra Mot. 12–13. But the injury to Union Pacific is not the physical presence of Metra's commuter trains; it is their presence without Union Pacific's consent, without agreeing to any terms with Union Pacific, without just compensation, and without any right to exclude Metra for the indefinite future, no matter the reason. *See Union Pac. R.R. v. CTA*, 647 F.3d 675, 682–83 (7th Cir. 2011) (in a similar context, emphasizing the significant difference between Union Pacific leasing rail lines to another railroad versus having those lines condemned for the other railroad's use). Having a tenant and having a government-authorized squatter are not the same thing.[1]

---

[1] Metra also says it has a contractual right to keep using Union Pacific's lines anyway. *See* Metra Mot. 12. But of course the Board's September 3 order does not enforce any such supposed right—and when Metra made the same argument in court, it failed. *See Metra v. Union Pac. R.R.*, No. 1:25-cv-2439, 2025 WL 1787514, at *5 (N.D. Ill. June 27, 2025) ("Nothing in the FFAs grants Metra access to the [rail lines] for [any price]").

16

## CONCLUSION

For these reasons, the Court should deny the abeyance motions.


December 15, 2025

Respectfully submitted,

/s/ *Tobias S. Loss-Eaton*
Raymond A. Atkins
Allison C. Davis
Tobias S. Loss-Eaton
Stephen S. Laudone
Brooke B. Boyd
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
tlosseaton@sidley.com
(202) 736-8000

*Counsel for Petitioner*

## CERTIFICATE OF COMPLIANCE

This opposition complies with Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font. The opposition complies with Rule 27(d)(2) because it contains 3,254 words, excluding the sections listed in Rule 32(f).

## CERTIFICATE OF SERVICE

On December 15, 2025, I caused a copy of the foregoing document to be filed through the Court's electronic filing system, which will serve copies on all registered counsel.

 /s/ *Tobias S. Loss-Eaton*
Tobias S. Loss-Eaton

*Counsel for Petitioner*

**Exhibit A**




November 21, 2025

Ms. Liisa Lawson Stark
VP Public Affairs
Union Pacific Railroad
1400 Douglas Street, 15th Floor Omaha, Nebraska 68179

Sent via email: Llstark@up.com

Dear Ms. Stark:

Thank you for UP's updated clean and red-lined versions of Trackage Rights Agreement (TRA), received on November 7th and 12th, 2025. We aim to have a similar clean and red-lined version, accounting for recent subject matter expert discussions, sent back to you by November 26th.

Per your request, we are expanding upon the counteroffer Metra proposed on November 14th. ██████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

████████████████████████████████████████████████████
███ ██ ███ ██ ████ ████ ████ ███ ████ ███ ███ ██ ████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████

   ██  ████████████████████████████████████████████████
       ████████████████████████████████████████████████
       ████████████████████████████████████████████████
       ████████████████████████████████████████████████
       ████████████████████████████████████████████████
       ████████████████████████████████████████████████
       ████████████████████████████████████████████████
       ████████████████████

   ██  ███████████████████████ ██████████████████████████
       ████████████████████████████████████████████████
       ████████████████████████████████████████████████
       ███████████████████
         ██  ██████████████████████████████████████████
             ████████████████████████████████



We appreciate your attention to these matters. Our goal remains to reach agreement with you or to identify any remaining disputed issue(s) by the end of December. Thank you.

Sincerely,

John A. Milano
Deputy Executive Director-Administration