# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

No. 25-2919

_____

UNION PACIFIC RAILROAD COMPANY,
*Petitioner,*

v.

SURFACE TRANSPORTATION BOARD and
UNITED STATES OF AMERICA,
*Respondents*

and

COMMUTER RAIL DIVISION OF THE REGIONAL
TRANSPORTATION AUTHORITY, d/b/a METRA
*Intervenor for Respondents*


**RESPONDENTS' REPLY IN SUPPORT OF THEIR
MOTION TO HOLD IN ABEYANCE AND
SUSPEND THE BRIEFING SCHEDULE**

_____

# INTRODUCTION

In the decision under review (<u>Decision</u>[1]), the Board made many complex findings, including that: Intervenor Metra provided rail transportation subject to the agency's jurisdiction under the law as it existed on January 1, 1996; the public interest in Metra's continued use of Petitioner Union Pacific's lines for Chicago-area commuters (as they had been used for decades) supported a grant of trackage rights; and it was reasonable to grant those rights over the entire distance of the Lines so that all existing passenger stations could be served. Metra has since asked the Board to set terms and compensation for the Lines' use within a six-month period referenced in the statute. 49 U.S.C. § 11102(d). The Board moved for abeyance until it has set terms and compensation because it would be most efficient for the Court to consider all issues in this proceeding at one time, with at most one set of briefs and one oral argument.

---

[1] <u>Commuter Rail Division of the Regional Transportation Authority d/b/a Metra—Terminal Trackage Rights—Union Pacific Railroad Company</u>, FD 36844 (STB served Sept. 3, 2025), attached as Exhibit A to Respondents' Motion to Hold in Abeyance, Doc. #5585319.

Union Pacific's claim that immediate review will "save" judicial resources[2]—when its latest agency filing opposes entry of a schedule and asks the Board to conduct another trackage-rights-merits inquiry to resolve questions about the "extent" of the rights granted to Metra in the Decision—is illogical.[3] Union Pacific's assertion that it will suffer "prejudice" or "harm" from delay—when it is currently being paid by Metra for use of Union Pacific's lines, and the Board has ensured compensation to Union Pacific pursuant to the statute and Constitution—is based on a misreading of the law and the record. And it ill becomes Union Pacific to complain that the agency proceeding will be protracted when it is Union Pacific that is seeking significantly to lengthen it.

---

[2] See UP Resp. in Opp., Doc. #5588439, at 7 (filed Dec. 15, 2025) (Resp.).

[3] Union Pacific has newly requested another Board ruling on the "extent" of Metra's trackage rights—in addition to any Board decision at the "terms-and-compensation" phase. Resp. 12; see also UP Reply to Metra's Pet. to Est. Conditions & Compensation, Metra—Terminal Trackage Rights—Union Pac. R.R., FD 36844, at 1, 5-7 (filed Dec. 15, 2025), attached hereto as Exhibit 1.

# ARGUMENT

## A. Immediate Judicial Review Will Waste Resources, Not Save Them

The <u>Decision</u> is reasonable, thorough, well-supported by the statute and relevant precedent, and firmly rooted in the unique facts of this case. <u>Decision</u>, at 4-33. Thus, other than in the improbable event that Union Pacific prevails on its current Petition, denying abeyance would almost certainly result in piecemeal review of at least two, and quite possibly three, agency decisions. And each review would require the Court to re-engage—following a time lag—with the same factual and regulatory background. Moreover, should the Board rule on the "extent" of Metra's rights, as Union Pacific has recently requested, judicial review of that determination may well overlap (<u>contra</u> Resp. 4, 7) with issues in the <u>Decision</u>, to the extent the Court would have to (again) review the Board's "public interest" and "terminal facilities" determinations. <u>See</u> Resp. 12; Exhibit 1, at 6.

Nor is it likely that judicial review now will make the latter phases of agency decision-making "evaporate[.]" <u>Contra</u> Resp. 7. Even in the unlikely scenario that Union Pacific prevails on an issue that results in a remand, there is no reason to conclude at this stage that

such a remand would moot the need for review of a "future agency decision." Moreover, abeyance now would not necessarily require the Court to "study all the fact-intensive terms-and-compensation issues" at a later date. Contra Resp. 7. If the Court orders an abeyance pending a terms-and-compensation decision by the Board, it could nevertheless review, and base any future decision on, one of the "threshold" issues Union Pacific has already raised.

In short, an abeyance ensures the Court need only issue a single decision. And absent abeyance, the likelihood of repeated, complex judicial review is very high.

## B. Union Pacific Fails to Establish Any Prejudice or Significant Hardship From Deferring Review

Union Pacific's argument (Resp. 14-15) that § 11102(a) and the Fifth Amendment required full payment to Union Pacific "before" or "at the time of" the taking (i.e., grant of trackage rights), such that any delay now is a denial of its rights, is plainly wrong.

The plain language of the statute requires that compensation be "paid or adequately secured" at the time of the taking. 49 U.S.C. § 11102(a) (emphasis added). And here, payment has been fully secured by the Board's pledge of retroactive payment to make Union Pacific

4

whole.  Decision at 31-33; see also, e.g., S. Pac. Transp. Co. v. ICC, 736 F.2d 708, 723 (D.C. Cir. 1984) (per curiam) ("We hold that the [agency] is bound by this statement [to set compensation under condemnation principles] and that it fulfills the requirement of the term 'adequately secured' under 49 U.S.C. § 11103(a) [§ 11102(a)'s predecessor].").

Similarly, under the Constitution, the right to compensation for a taking is satisfied "[s]o long as the property owner has some way to obtain compensation after the fact." Knick v. Township of Scott, 588 U.S. 180, 185 (2019); see also id. at 190, 202. Contra Resp. 14-15 (selectively quoting Knick).  The Board has likewise met that standard by pledging that if it ultimately determines that Union Pacific has been under-compensated, Union Pacific will receive retroactively the difference between what Metra is currently paying and Union Pacific's entitlement.  Union Pacific has not established that having to wait to be paid the difference between what Metra is paying it now and what it desires to be paid will cause it some harm justifying immediate judicial review.

Moreover, although Union Pacific suggests that Metra is trying to "force its way onto a freight railroad's lines" "without [ ] consent," (Resp.

at 1-2, 5, 8), Union Pacific has made clear that, at least as long as the Board proceeding is underway, Metra has its consent to provide commuter rail service on the Lines. See Resp. at 1 (stating that Union Pacific "has committed to allowing Metra to keep using its lines"); id. at 2 (citing the "absence of any exigency or risk of disruption" to Metra's operations). Thus, the track use that Union Pacific claims is now "prejudicing" it is essentially the same use that Union Pacific has been allowing since well before the Board's Decision. That is no basis to justify wasteful, piecemeal review.

At bottom, Union Pacific's only claimed harm is that the Board has ordered Metra's continued use of the Lines. Respondents recognize that there is a legally cognizable difference between voluntary trackage rights and those imposed by the Board under § 11102(a). Resp. 16. But no hardship is caused by an abeyance, as the parties have not modified their behavior in any material way as a result of the Board's Decision. Am. Petroleum Inst. v. EPA, 683 F.3d 382, 387 (D.C. Cir. 2012). And abeyance now neither prevents Union Pacific from seeking review, nor deprives Union Pacific of just compensation. Contra Resp. 5, 14. Union Pacific will have a chance to appeal the rulings it contests after the

conclusion of the agency proceedings that it is currently seeking to prolong.

## C. The Board Has Acted Promptly in the Underlying Agency Proceeding.

The Board has already shown expedition in handling key aspects of this case. It met the 180-day statutory deadline to resolve the merits of Metra's trackage-rights application (and addressed a preliminary injunction request early in the proceeding), and it promptly imposed both temporary and interim liability and indemnity terms at Union Pacific's request. It is thus both speculative and disingenuous for Union Pacific to presume a lengthy timeframe for the rest of this matter, particularly where Union Pacific is the one opposing initiation of a terms and compensation proceeding and indicating the need for an additional trackage-rights merits phase and possible Board-sponsored mediation, (see Exhibit 1, at 5-10).[4]

_____

[4] Union Pacific's suggestion that the terms-setting phase here could take as long to resolve as in the Lake Charles proceeding on appeal in Kansas City Southern v. STB is unfounded. As Union Pacific knows (because it is a party to that proceeding), the Lake Charles matter is a unique, multi-party dispute stemming from a decades-old major rail merger. It also involved numerous delays related to the parties' own actions or choices—including an 18-month initial negotiation period,

(continued on next page…)

**CONCLUSION**

Because Union Pacific provides no sufficient basis for inefficient, piecemeal review of the parties' dispute, the Court should hold the case in abeyance and suspend the briefing schedule until the Board has resolved the outstanding disputed issues. Rather than review the Decision now, Union Pacific's concerns about "open-ended delay" (Resp. 5) can more efficiently be addressed with the filing of status reports at regular intervals. This will allow the Court to monitor the agency's progress toward a prompt resolution of outstanding issues and allow Union Pacific to raise any new arguments for why further delay would outweigh the Court's interest in judicial economy.

Respectfully submitted,

ROBERT B. NICHOLSON
ROBERT J. WIGGERS
Attorneys

/s/ Carolyn J. Chachkin
CAROLYN J. CHACHKIN
Attorney

ANIKA SANDERS COOPER

---

two rounds of Board-sponsored mediation, and a technical conference and supplemental filings caused by the filing of apparently erroneous compensation data. The D.C. Circuit has continued to defer review in the interest of judicial economy and to allow the agency to complete its decision-making. See, e.g., Kan. City S. v. STB, No. 22-1116, slip. op. at 2 (D.C. Cir. Aug. 11, 2022) (per curiam).

U.S. Department of Justice
Antitrust Division
950 Pennsylvania Avenue
Washington, DC  20530

Chief Counsel

SCOTT M. ZIMMERMAN
Acting Deputy Chief Counsel

ADAM M. KRESS
Associate Counsel – Litigation

Surface Transportation Board
395 E Street SW
Washington, DC 20423-0001
(202) 919-6195

December 22, 2025

carolyn.chachkin@stb.gov

## CERTIFICATE OF COMPLIANCE

1. This reply in support of a motion complies with Federal Rule of Appellate Procedure 27(d)(2)(C)'s type-volume limitation because it contains **1,589** words (as determined by the Microsoft Word word-processing system used to prepare it).

2. This reply in support of a motion complies with Rule 27(d)(1)(E)'s typeface and type-style requirements because it has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

## CERTIFICATE OF SERVICE

On December 22, 2025, I caused a copy of the foregoing document to be filed through the Court's electronic filing system, which will serve copies on all registered counsel.

*/s/ Carolyn J. Chachkin*
CAROLYN J. CHACHKIN
Attorney
Surface Transportation Board
395 E Street, SW
Washington, DC 20423-0001
carolyn.chachkin@stb.gov

December 22, 2025

# Exhibit 1

310520

ENTERED
Office of Chief Counsel
December 15, 2025
Part of
Public Record

**BEFORE THE**
**SURFACE TRANSPORTATION BOARD**

---

**DOCKET NO. FD 36844**

**COMMUTER RAIL DIVISION OF THE REGIONAL**
**TRANSPORTATION AUTHORITY D/B/A METRA**
**—TERMINAL TRACKAGE RIGHTS—**
**UNION PACIFIC RAILROAD COMPANY**

---

**UNION PACIFIC RAILROAD COMPANY'S REPLY TO METRA'S**
**REQUEST TO ESTABLISH CONDITIONS AND**
**COMPENSATION**

---

Christina B. Conlin
James B. Boles
Tonya W. Conley
UNION PACIFIC RAILROAD COMPANY
1400 Douglas Street
Omaha, NE 68179

Raymond A. Atkins
Allison C. Davis
Tobias S. Loss-Eaton
Marc A. Korman
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000

*Counsel for Union Pacific Railroad*
*Company*

Dated: December 15, 2025

The Board should deny Metra's request to initiate a conditions and compensation proceeding. Citing the statutory language that conditions the Board's authority to set compensation and conditions upon a lack of agreement between rail carriers, the Board previously required Union Pacific and Metra to undertake a "concerted, good faith effort to reach agreement on terms and compensation for Metra's use of the UP Lines."[1] Union Pacific and Metra are continuing to make progress in their ongoing negotiations. Indeed, just a few days before claiming an impasse—and with no intervening developments—Metra reiterated in a letter to Union Pacific that its goal remains to reach agreement with Union Pacific or to identify any remaining disputed issues by the end of December.

Metra's December 1 request to commence a complex proceeding on compensation and conditions appears driven by a desire to justify abeyance in the pending appeal from the September 3 order. The Board should not allow Metra's appellate strategy to undermine ongoing efforts at private resolution of these issues that could moot some or all of the issues identified in Metra's request.

Further, to the extent that Metra's request suggests that Metra intends to seek an expansion of the Board's September 3 order beyond the UP Lines, the Board should clarify that those issues must be resolved after briefing and *prior to* commencing a compensation and conditions proceeding. It is particularly important for the orderly administration of any future compensation and conditions proceeding that the parties actually know the property for which they are seeking terms and

---

[1] Decision, Docket No. FD 36844, at 33 (STB served Sept. 3, 2025).

proposing compensation. Union Pacific provides its suggestions on a procedural schedule to govern that briefing, as well as preliminary considerations on a procedural schedule for any possible future compensation and conditions proceeding.

Finally, given the intervening order granting access and the progress made in negotiations thus far, Union Pacific suggests that the Board consider Board-sponsored mediation to facilitate agreement between the parties.

## I. Metra's Request to Initiate a Compensation and Conditions Proceeding Should be Denied as Premature.

In the September 3 order, the Board stated that it "expects and encourages [the parties] to undertake a concerted, good faith effort to reach agreement" and declined to impose a deadline by which the parties' negotiations must be completed.[2] Only if "the parties cannot reach an agreement" were they to ask the Board to initiate a compensation and conditions proceeding.[3] This mandate was in recognition of the statute, which provides that the Board may only set conditions and compensation "if the rail carriers cannot agree," 49 U.S.C. § 11102(a). It also prevents needless litigation, thus conserving both party and Board resources.

Yet Metra is short circuiting that Board-directed process by seeking the initiation of a proceeding while, by Metra's own account, *the parties continue to make progress in their ongoing negotiations. See* Metra Request at 3, 5 (filed Dec. 1, 2025) (conceding the parties will continue their negotiations and acknowledging that they are working to "narrowing the issues"). The parties have made progress and continue

---

[2] *Id.*
[3] *Id.*

to do so—reaching common ground on multiple issues and narrowing the gap on others. Indeed, in the short time since the filing of Metra's request to the Board claiming an impasse, the parties have met twice to continue their negotiations on the very topics which Metra claims the Board must resolve, and are scheduled to meet again on December 16.

Just a few days before claiming an impasse—and with no intervening developments—Metra sent Union Pacific a letter providing counteroffers on certain terms and promising a redlined draft agreement, saying that Metra's "goal remains to reach agreement with you or to identify any remaining disputed issue(s) by the end of December."[4] Yet before Union Pacific could even respond—indeed, before Metra even provided the promised redline—Union Pacific learned via its counsel that Metra would be filing a petition at the Board claiming an impasse. Counsel's inquiry regarding this unexplained shift has gone unanswered,[5] though the shift appears related to Metra's desire for an abeyance of the appellate proceeding before the U.S. Court of Appeals for the Eighth Circuit. Specifically, on November 26—the same day Metra was due to provide Union Pacific the promised redline agreement—Metra submitted a filing to Eighth Circuit, taking the position that because Metra filed the

---

[4] Exhibit A, Letter from J. Milano (Metra) to L. Stark (Union Pacific) dated Nov. 21, 2025. Union Pacific is redacting all information about the substance of their current negotiations from the letter.

[5] Exhibit B, Email from R. Atkins (counsel for Union Pacific) to P. Pfolh (counsel for Metra) dated Nov. 21, 2025.

request to initiate before the STB, the Eighth Circuit litigation should be held in abeyance.[6]

The timing strongly suggests that Metra is claiming to have hit a roadblock in negotiations (even as it continues negotiating) so it can justify its abeyance request to the Court. The Board should not allow Metra's appellate strategy to needlessly undermine ongoing efforts at private resolution of these issues—efforts that were mandated by the Board. The parties should finish their concerted, good faith effort to come to mutual agreement before initiating a complex proceeding on conditions and compensation. Indeed, Union Pacific received Metra's most recent redline proposal on December 9, 2025, and is reviewing that with plans to respond shortly.

Allowing the parties to continue ongoing productive negotiations is consistent with the statutory recognition that the Board may only set conditions and compensation "if the rail carriers cannot agree," 49 U.S.C. § 11102(a); the Board's long-standing preference for the private resolution of disputes whenever possible;[7] and judicial economy.

Given Metra's stated goal to allow negotiations to continue through the end of this month and the ongoing productive negotiations, the Board should decline to initiate a proceeding at this time and instead require the parties to submit their

---

[6] Metra's Response to Respondents' Status Report ¶ 5, *Union Pac. R.R. v. STB*, No. 25-2919 (8th Cir. Nov. 26, 2025); *see also* Metra Motion to Hold in Abeyance and Suspend the Briefing Schedule, *Union Pac. R.R. v. STB*, No. 25-2919 (8th Cir. Dec. 5, 2025).

[7] *See, e.g., Central Tex. & Colo. River Ry.—Aban. Exemption—In McCulloch, San Saba, Mills, & Lampasas Cntys., Tex.*, Docket No. AB 1272X, at 3 (STB served July 9, 2020).

status report under the schedule mandated by the September 3 order.[8]  That would be consistent with Metra's previously stated timeline to allow negotiations to continue through the end of December, at which point the parties can assess the state of negotiations and, if necessary, which issues they believe need to be submitted to the Board for resolution and discuss proposed procedural schedules.

## II. Any Request to Expand the Scope of the September 3 Order Must be Resolved First.

Metra identifies five disputed issues for resolution in a compensation and conditions proceeding.  Yet the first of those five issues is neither compensation nor a condition.

Metra asks the Board to address the "scope of the trackage rights."[9]  Metra provides no other context, but based on Metra's prior rebuttal filing, Union Pacific assumes that Metra will seek to expand the Board's September 3 order from covering the UP Lines to a potentially wide array of other real estate and/or facilities.  On rebuttal, Metra proposed interim terms and conditions that would have expanded the scope of relief sought beyond the UP Lines to other facilities such as parking lots and offices.[10]  Union Pacific, in its motion to strike, noted the host of issues relating to this request, including Metra's inability to even identify the "other real estate and facilities" to which it sought expanded access.[11]  While the Board did not strike

---

[8] In a simultaneously filed motion for protective order, Union Pacific is seeking confirmation that it need not respond to Metra's discovery requests at this time.

[9] Metra Request at 3.

[10] Metra Rebuttal at 44.

[11] Union Pac. Mot. To Strike, at 2 (filed June 25, 2025).

Metra's proposed interim terms, it did emphasize that those problematic issues identified by Union Pacific need not be addressed "because the Board is not entertaining either party's interim proposal" and "ha[d] not relied on the evidence referenced in UP's motion in this decision."[12]

Metra's application for terminal trackage rights "relate[d] to the three UP Lines," which it defined in its application as "the UP-N line," the "UP-NW line" "with a branch to McHenry," and "the UP-W line."[13] Because Metra's application was for the three UP Lines, the parties' briefing—and thus the Board's decision—likewise were limited to the UP lines. *See, e.g.,* September 3 Order at 19–20, 27, 28 (addressing, e.g., "each UP Line," the "line segments," "each Line," the "UP Lines", and "the tracks").

Any attempt by Metra to expand the scope of the September 3 order beyond the UP Lines must be resolved after a request by Metra that identifies with specificity the facilities to which it seeks access and an opportunity for Union Pacific to respond. Whether any additional facilities are "terminal facilities" and if so whether their use is practicable and in the public interest are issues that must be addressed by the Board after an opportunity for briefing.

Further, it is essential that any request for expanded access be resolved separately for the orderly administration of any future conditions and compensation

---

[12] September 3 Order at 13.

[13] Metra Appl. 7–8; *see also* Metra First Set of Discovery Requests, Definitions ¶ 14 (defining the UP Lines "for which Metra has applied for terminal trackage rights" as being the UP-North, UP-Northwest, and UP-West "railroad lines of UP.").

proceeding. Such a proceeding will be complicated enough for just the UP Lines. Terminal trackage rights compensation proceedings are notoriously complex and lengthy and this case is unique in that it involves joint use between a freight and commuter carrier over multiple lines. Knowing the scope of the property at issue is essential to being able to litigate and analyze the compensation that is owed for that property. The nature of the facilities at issue will have a direct bearing on the appropriate methodology for compensation and the necessary terms relating to access to that property. Resolving the scope of the property at issue will focus discovery and the submission of evidentiary issues, thus conserving Board and party resources and ensuring the efficient administration of this proceeding consistent with the Board's announced priorities.[14]

Union Pacific thus suggests the following schedule for addressing any potential request for expanded access beyond the UP Lines:

| | |
|---|---|
| Day 0 | Metra opening submission, identifying with specificity any additional terminal facility(ies) to which it seeks access |
| Day 30 | Union Pacific reply submission |
| Day 50 | Metra rebuttal submission |

---

[14] *STB Gathers More Than 100 Ideas From Legal Practitioners to Streamline Board Processes* (June 10, 2025), https://www.stb.gov/news-communications/latest-news/pr-25-22/ (announcing areas of focus for ensuring efficient proceedings, including discovery).

This schedule would be consistent with the briefing schedule the Board adopted in its March 20, 2025 decision for the submission of argument and evidence regarding Metra's application for access to the UP Lines.[15]

After issuing a decision on the property subject to the September 3 order, the Board would if necessary address compensation and conditions on request. Without the Board having addressed any potential request for expanded access, it is difficult to propose a definitive procedural schedule given uncertainty regarding the scope of needed discovery and issues relating to compensation methodologies, which may vary depending on the property at issue.

If, however, the Board were to decline to resolve issues regarding scope in advance, then Union Pacific offers the following preliminary considerations on a procedural schedule. First, any such schedule should clarify that the proceeding begins upon a Board decision granting a request to initiate a proceeding.

Second, discovery should commence upon issuance of the order initiating the proceeding (as explained further in Union Pacific's simultaneously filed motion for protective order). Metra's proposed 60-day period would almost certainly be insufficient. In another pending proceeding on compensation for trackage rights, the discovery period was 90 days—and that proceeding involves only a single line, no questions about scope, and the more typical scenario where use is exclusively by freight railroads.[16] If the scope of the order were undetermined going into discovery,

---

[15] Decision, Docket No. FD 36844, at 2 (STB served Mar. 20, 2025).

[16] *See, e.g., Atchison, Topeka & Santa Fe Ry.—Operating Rights—S. Pac. Transp. Co.,* Docket No. FD 22218 (STB served July 13, 2023).

the parties will be required to expend significant and potentially unnecessary resources propounding and producing discovery concerning compensation and conditions for facilities that may or may not be subject to the September 3 order. Union Pacific does not concede that *SSW Compensation* is an appropriate methodology at this time, given the unspecified nature of the facilities to which Metra may or may not seek access. And depending on the facilities at issue, it may behoove the Board and the parties to resolve methodological disputes first, as it has in other proceedings.[17]

Finally, it is Union Pacific's understanding that conducting an additional valuation could take approximately six months, depending on the scope of the property that would need to be analyzed.[18] This is yet another reason it would be essential for any issues regarding scope to be resolved in advance.

## III. Board-Sponsored Mediation May Help Facilitate Agreement Between the Parties.

Prior to Metra's filing of its application for terminal trackage rights, the parties engaged in Board-sponsored mediation under 49 U.S.C. § 28502 and 49 C.F.R. Pt. 1109. That mediation concluded on January 31, 2025.

Since that time, the Board has entered an order granting terminal trackage rights and the parties have made progress in their negotiations. Union Pacific agrees

---

[17] *See, e.g., Atchison, Topeka & Santa Fe Ry.—Operating Rights—S. Pac. Transp. Co.,* Docket No. FD 22218 (STB served May 15, 2023).

[18] Prior to Metra's filing an application at the Board, Union Pacific received a valuation analysis of the land associated with the UP Lines. However, that report did not include a valuation of track structure or property other than the UP Lines.

with Metra's assessment that the parties are in substantial agreement on a range of issues, including compensation-related issues.

While the parties have not yet reached substantial agreement on, for example, indemnity provisions, their subject matter experts have been meeting to address those issues and Union Pacific received language from Metra on December 9, 2025, in a proposed redline agreement. With regard to the access fee, the parties have closed the gap between them and continue to exchange proposals. Union Pacific is reviewing Metra's December 9 redline in conjunction with Metra's November 21 proposal and plans to respond shortly.

Given the progress that has occurred since last year's mediation, Union Pacific is amenable to engaging in Board-sponsored mediation to facilitate agreement between the parties.

The restriction at 49 C.F.R. § 1109.3(b)—that the Board will not order mediation more than once in any proceeding unless all parties mutually request another round—should not apply, as the parties prior attempt at mediation occurred in Docket No. FD 36800 prior to Metra's application to the Board. Even if it did apply, the Board has waived that restriction in analogous circumstances. *See BNSF Ry.— Terminal Trackage Rights—Kansas City S. Ry. & Union Pac. R.R.*, Docket No. FD 32760 (Sub-No. 46) (STB served July 3, 2019) (waiving that restriction when the previous attempt at mediation had occurred prior to the Board granting an application for terminal trackage rights).

## CONCLUSION

For the reasons set above, the Board should deny Metra's request to initiate a conditions and compensation proceeding at this time.

Respectfully submitted,

/s/ Raymond A. Atkins

| | |
|---|---|
| Christina B. Conlin | Raymond A. Atkins |
| James B. Boles | Allison C. Davis |
| Tonya W. Conley | Tobias S. Loss-Eaton |
| UNION PACIFIC RAILROAD COMPANY | Marc A. Korman |
| 1400 Douglas Street | SIDLEY AUSTIN LLP |
| Omaha, NE 68179 | 1501 K Street, N.W. |
| | Washington, DC 20005 |
| | (202) 736-8000 |

*Counsel for Union Pacific Railroad Company*

Dated: December 15, 2025

11

## CERTIFICATE OF SERVICE

I hereby certify that, on this 15th day of December 2025, the foregoing filing was served by first-class mail or more expeditious means on all parties of record in this proceeding.

*/s/ Marc A. Korman*
Marc A. Korman

**Exhibit A**


November 21, 2025

Ms. Liisa Lawson Stark
VP Public Affairs
Union Pacific Railroad
1400 Douglas Street, 15th Floor Omaha, Nebraska 68179

Sent via email: Llstark@up.com

Dear Ms. Stark:

Thank you for UP's updated clean and red-lined versions of Trackage Rights Agreement (TRA), received on November 7th and 12th, 2025. We aim to have a similar clean and red-lined version, accounting for recent subject matter expert discussions, sent back to you by November 26th.

Per your request, we are expanding upon the counteroffer Metra proposed on November 14th. ███████

███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████
███ ███ ███ ███ ███ ███ ███ ███ ███ ███ ███ ███ ██ ███████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
█████████████████████

  █  ███████████████████████████████████████████████████████████
     ███████████████████████████████████████████████████████████
     ███████████████████████████████████████████████████████████
     ███████████████████████████████████████████████████████████
     ███████████████████████████████████████████████████████████
     ███████████████████████████████████████████████████████████
     ███████████████████████████████████████████████████████████
     ████████████████████

  █  ████████████████████████ ███████████████████████████████████
     ███████████████████████████████████████████████████████████
     ███████████████████████████████████████████████████████████
     ████████████████████
        █  ███████████████████████████████████████████████████
           ███████████████████████████████████████████████████



We appreciate your attention to these matters. Our goal remains to reach agreement with you or to identify any remaining disputed issue(s) by the end of December. Thank you.

Sincerely,

John A. Milano
Deputy Executive Director-Administration

**Exhibit B**

| | |
|---|---|
| **From:** | Atkins, Raymond |
| **Sent:** | Wednesday, November 26, 2025 1:53 PM |
| **To:** | pap@sloverandloftus.com |
| **Subject:** | Metra/UP |

Pete – Thanks for the call yesterday. I'm a bit perplexed by Metra's plan to initiate a case at the STB given that negotiations are continuing. It is my understanding that Metra and UP have made good progress in the negotiations and (just last Friday) Metra promised to send a redline of a draft agreement over to UP today. I also understand UP and Metra still are planning to meet to continue discussions. And as stated in the November 21 letter from John Milano to Liisa Stark, Metra just reiterated that "Our goal remains to reach agreement with you or to identify any remaining disputed issue(s) **by the end of December**."

Given the ongoing productive negotiations, it's not clear to me why Metra would be filing anything at the STB right now.

Happy to discuss further if you like. And thank you again for the head's up on the possible filing. I am hopeful, however, that Metra will reconsider.

Best,

Ray


**RAYMOND A. ATKINS PH.D.**


**SIDLEY AUSTIN LLP**
1501 K Street, N.W.
Washington, DC 20005
+1 202 736 8889
ratkins@sidley.com
www.sidley.com

