No. 25-2919

---

*In the*

# United States Court of Appeals

*for the*

# Eighth Circuit

---

UNION PACIFIC RAILROAD COMPANY,
*Petitioner,*

– v. –

SURFACE TRANSPORTATION BOARD AND
UNITED STATES OF AMERICA
*Respondents;*

COMMUTER RAIL DIVISION OF THE REGIONAL TRANSPORTATION AUTHORITY
D/B/A METRA,
*Intervenor.*

---

**REPLY IN SUPPORT OF
INTERVENOR COMMUTER RAIL DIVISION OF THE
REGIONAL TRANSPORTATION AUTHORITY'S
MOTION TO HOLD PROCEEDINGS IN ABEYANCE**

---

PAUL W. HUGHES
ANDREW A. LYONS-BERG
MARY H. SCHNOOR
EMMETT WITKOVSKY-ELDRED
  *McDermott Will & Schulte LLP*
  *500 North Capitol Street NW*
  *Washington, DC 20001*
  *(202) 756-8000*

*Counsel for Commuter Rail Division of the
Regional Transportation Authority d/b/a Metra*

# TABLE OF CONTENTS

Introduction ............................................................................. 1

Argument .................................................................................. 2

    A.   An abeyance will preserve judicial and party resources. .............. 2

    B.   The Court is unlikely to resolve UP's petition for review before the current STB proceeding concludes. ............................ 5

    C.   An abeyance will not prejudice UP. ............................................... 9

Conclusion ............................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Commuter Rail Div. of Reg'l Transp. Auth. v. Union Pac. R.R.,*
2025 WL 1787514 (N.D. Ill. June 27, 2025) ........................................... 10

*Commuter Rail Div. of Reg'l Transp. Auth. v. Union Pac. R.R.,*
No. 25-cv-2439 (N.D. Ill.) ............................................................. 8

*Kan. City S. Ry. v. STB,*
No. 16-1308 (D.C. Cir.) ............................................................... 8

*Kan. City S. Ry. v. STB,*
No. 20-1116 (D.C. Cir.) ............................................................... 9

*Knick v. Twp. of Scott,*
588 U.S. 180 (2019) ................................................................. 11

*Peters v. Union Pac. R.R.,*
80 F.3d 257 (8th Cir. 1996) .......................................................... 3

**Statutes**

49 U.S.C. § 11102(a) ................................................................... 3

# INTRODUCTION

Abeyance is the approach that best respects judicial and party resources. UP's petition for review concerns only half of an ongoing two-part statutory proceeding. Accordingly, if this Court were to proceed with UP's appeal now, the Court's adjudication will likely be interrupted midstream by yet more issues to consider. Abeyance, by contrast, will ensure that the Court only reviews the issues once—with the benefit of all issues being resolved below and a complete factual record. Further, because UP itself argues that the parties may still reach agreement, an abeyance might very well moot this proceeding.

An abeyance would not prejudice anyone. UP and Metra agree on one central point: The outcome of UP's current petition for review will have no bearing whatsoever on whether Metra continues to use the UP Lines. In exchange for Metra paying for hundreds of millions of dollars of improvements to its lines, UP guaranteed Metra continuing access. UP opposes this contractual reality but nonetheless admits that it will—at minimum—"voluntarily" allow Metra to use the UP Lines. There is thus no actual dispute as to *whether* Metra will operate on the lines—UP and Metra, albeit for different reasons, agree that operations will continue without interruption.

In terms of current operating conditions, UP cannot claim harm: When it proposed to the STB specific liability and indemnity conditions to

govern Metra's ongoing use, the agency promptly gave UP exactly what it requested.

As for compensation Metra is to pay UP, that issue is not time sensitive. Metra is continuing to pay UP substantial sums for use of the UP Lines and, if UP shows it is owed more, it will be made whole. Nothing about UP's claim for additional money justifies multiplying judicial proceedings. The Court should hold this matter in abeyance until the STB proceeding is complete.[1]

## ARGUMENT

### A.    An abeyance will preserve judicial and party resources.

UP's opposition acknowledges (at 6) that Congress created a bifurcated terminal trackage rights process. First, the STB determines whether to award terminal trackage rights. Second, if the parties cannot agree on conditions governing use, the agency sets them. Noting this, Metra (Mot. 7-11) and the STB (STB Mot. 9-12) make a straightforward case for abeyance: reviewing the STB's adjudication of the dispute halfway through will cause unnecessary inefficiencies for the Court and the parties. The foundational principle that courts should "avoid[] needless repetition of administrative

_____

[1]   UP's statement (Opp. 1) that the Court's prior order denying UP's request to stay the effect of the STB's September 3, 2025 decision and providing a date for UP's brief silently rules on this motion is incorrect. The issues presented here were not heard or resolved by the Court and warrant full consideration.

and judicial factfinding" (*Peters v. Union Pac. R.R.*, 80 F.3d 257, 263 n.3 (8th Cir. 1996)) supports an abeyance.

UP also is wrong that there is no "meaningful overlap" between the two proceedings. Opp. 7.

*First*, UP's own opposition contradicts the suggestion that the issues raised in the two proceedings are distinct. UP (Opp. 12) argues that the precise "scope of the trackage rights" the STB has awarded Metra remains unresolved and will be further addressed during the ongoing proceeding. As the STB notes (STB Mot. 10), that issue is interrelated with issues UP raises in its pending petition for review, including the statutory questions of whether "Metra's application addressed 'terminal facilities, including main-line tracks for a reasonable distance outside of a terminal,'" and whether 'Metra's requested relief was 'practicable and in the public interest.'" UP Petition for Review at 2 (quoting 49 U.S.C. § 11102(a)). That UP itself perceives the scope of Metra's trackage rights to be an outstanding issue—and one it intends to revisit below—confirms that the Court should await completion of the STB proceedings.

If nothing else, the ongoing STB proceeding will promote useful factual development. As the STB points out (STB Mot. 10), UP's petition does not exclusively raise "purely legal" issues but also presents "highly fact-spe-

cific questions" including, in addition to "geographic scope," the "public interest implications of the trackage-rights grant." Wading into the partial factual record generated before the STB to date would be an inefficient use of the Court's time when, as UP previews, more relevant fact development is now underway.

*Second*, an abeyance—which will allow the parties to brief all issues at once, for the Court to resolve at one time—can only conserve judicial resources. As we show below (*infra* pages 5-9), it is highly unlikely that this proceeding will resolve before the STB proceeding concludes. Addressing all the issues arising below in a single review proceeding is more efficient than seriatim review of a complex agency record.

UP suggests that an abeyance risks waste because the Court will be required to "study all the fact-intensive terms-and-compensation issues" when it could "ultimately hold[] that Metra has no statutory trackage rights to begin with." Opp. 7. But, as the STB notes (STB Mot. 11), after an abeyance—should the case remain *at all*—the Court can resolve the proceeding on whatever grounds it deems appropriate. If, as UP postulates, the Court chooses to resolve the matter on a threshold issue, the Court will have every ability to do so then.

*Third*, abeyance preserves the possibility of the STB proceeding mooting this matter. *See* Metra Mot. 7-9; STB Mot. 10. In attorney *ipse dixit*, UP

pledges, no matter what, to pursue judicial review. Opp. 8. But UP contradicts this same argument in its simultaneously filed submission to the STB, where UP "suggests that the Board consider Board sponsored mediation to facilitate agreement between the parties." Ex. 6 at 2. That is, before the STB, UP itself contends the STB may not need to take additional action *because the parties may themselves reach agreement*. Metra agrees that the parties can and should continue to work toward resolution.[2] UP's suggestion that a potential final resolution lies in the STB proceeding is proof positive of Metra's case for abeyance: awaiting the proceeding's conclusion may resolve this dispute without needing judicial action.

**B.      The Court is unlikely to resolve UP's petition for review before the current STB proceeding concludes.**

The ongoing STB proceeding will likely conclude before this Court resolves UP's petition for review, as explained in the opening motions (Mot. 8-9; STB Mot. 15). Under Metra's proposed procedural schedule, the STB would issue its final decision by June 1, 2026. Metra Mot. Ex. 2 at 6. Briefing

---

[2]      Though Metra opposes delay via additional agency-sponsored mediation in view of the parties' prior unsuccessful mediation and the unproductive positions that UP has taken to date in post-decision discussions, the schedule Metra proposed for the ongoing STB proceeding contemplates the parties' continued negotiations. *See* Metra Mot. Ex. 2 at 5. Should the STB order mediation, Metra understands UP to propose negotiating toward a complete resolution, *i.e.*, that UP is not asking to consume party and agency resources in a partial negotiation, so that UP may nonetheless seek review.

of UP's petition for review, by contrast, likely would conclude in spring of 2026, with oral argument months later. Absent abeyance, this Court's consideration of the petition for review will almost surely be disturbed either by a new tranche of issues arising from the forthcoming STB decision or news that the parties have settled the matter, mooting this proceeding.

**1.** UP's first line of attack regarding the timing for Metra's request to the STB to set conditions and compensation is regrettable. UP makes unsupported *ad hominem* assertions that Metra initiated the next phase of the STB proceedings for no greater reason than to support its abeyance request. *See* Opp. 11. Seeking to substantiate that inaccurate narrative, UP attaches and uses out of context an almost entirely redacted settlement communication. UP agreed that such communications would be "confidential" and that it "shall not refer to such communications … in any way … before any court." Ex. 7. UP's supposed argument based on a misused and excerpted settlement communication deserves no credit.

UP's narrative is also false. Given the parties' inability to make progress on issues central to their statutorily required negotiations after the STB's September 3 Decision, Metra informed UP specifically and unequivocally on November 18, 2025—before sending the November 21 settlement letter—that, absent a resolution *by December*, Metra would ask the STB for relief. Metra later confirmed the planned December 1, 2025 filing date for

its conditions and compensation request with UP's counsel and cited that specific date in its Response to Respondents' Status Report with this Court on November 26, 2025—all well before its abeyance motion. Metra's decision to seek relief before the STB had nothing to do with "justify[ing] its abeyance request in this Court." Opp. 11. Metra requested agency intervention because the parties were at an impasse—a possibility addressed by the September 3 Decision—and to enable the proceeding below to move to a timely conclusion.

**2.** Nor is UP correct in speculating that the STB proceeding "will likely take far longer than the motions suggest." Opp. 12. UP argues that "terms-and-conditions proceedings are infamously complex and slow" (*id.*) and thus the STB proceeding might go beyond the 180-day statutory requirement. But UP provides no facts to support its speculation that the ongoing proceeding below would last longer than the statutory 180 days.[3] The STB met

_____

[3] UP argues that the STB proceeding will first resolve the "scope" of Metra's trackage rights before proceeding to compensation. Opp. 12. But UP does not explain why this technical issue involving the delineation of specific facilities necessary to the provision of Metra's passenger service would be resolved *before* the ongoing proceeding rather than as *part* of it, as Metra requested. It would not be. UP's proposed bifurcation of the STB proceeding would be unprecedented, as Metra has demonstrated. Ex. 8 at 3-4.

its statutory deadline in the earlier phase of the proceeding and has every facility to do the same again.[4]

But even if the STB proceeding did take longer than the 180-day statutory deadline, there would be no reason to deny an abeyance. UP notes (Opp. 12-13) that in *Kansas City Southern v. STB*, the abeyance granted by the D.C. Circuit has lasted several years based on subsequent developments. But far from being a "cautionary tale" (*id.* at 12), that case demonstrates why an abeyance is prudent following a terminal trackage rights decision, while proceedings remain pending, even if those proceedings last longer than anticipated.

In *Kansas City Southern*, after the STB initially granted terminal trackage rights, the D.C. Circuit held the resulting petition for review in abeyance to allow proceeding to fully conclude. *See Kan. City S. Ry. v. STB*, No. 16-1308, slip op. at 1 (D.C. Cir. Jan. 3, 2017) (per curiam). That proceeding has, to date, produced two *additional* STB decisions yielding petitions for review, which the D.C. Circuit has likewise held in abeyance because the

---

[4]   UP previously opposed staying litigation in the Northern District of Illinois partly by casting doubt that the STB would meet its statutory deadline for Metra's terminal trackage rights application. *See* Ex. 9 at 10:8-15.  The district court stayed proceedings nonetheless, which proved wise: The STB met its deadline, and the stay preserved judicial and party resources, as the STB's decision effectively mooted the case. *See generally* Dkt. Nos. 70-72, *Commuter Rail Div. of the Reg'l Transp. Auth. v. Union Pac. R.R. Co.,* No. 25-cv-2439 (N.D. Ill.).

agency action is ongoing. *See Kan. City S. Ry. v. STB*, No. 20-1116, slip. ops. at 2 (D.C. Cir. Aug. 7, 2020, and Aug. 11, 2022) (per curiam).

In other words, that case has seen three petitions for review to date, with at least one more likely coming. Had the D.C. Circuit opted against abeyance, it would have set the stage for *four or more* separate appeals concerning complex, interrelated issues. The court wisely opted to let the STB proceedings run their course, which will allow the court to consider one consolidated appeal.

This Court should do the same.

**C.    An abeyance will not prejudice UP.**

UP is not harmed by an abeyance. Metra is currently paying UP at a rate based on the contract that governed the party's relationship until June 30, 2025, which included annual escalators. As Metra (Mot. 11) and the STB (STB Mot. 13) noted, if the STB sets compensation at a higher rate, Metra will pay UP whatever additional amount UP is owed.

By UP's own admission, it *cannot* be harmed by the STB's decision providing a statutory right for Metra to use the UP Lines. UP again acknowledges what it has repeatedly told the Courts and the public: it is "committed to voluntarily host[] Metra anyway." Opp. 16; *see also id.* at 1 ("Union Pacific has no desire to interrupt commuter rail service, and it has committed to allowing Metra to keep using its lines while the parties work

towards a long-term agreement to govern their relationship."). Whether characterized as voluntary permission (as UP would have it) or a recognition of pre-existing contractual obligations (as Metra has argued[5]), the outcome of this petition for review on the terminal trackage rights decision will have no bearing on whether Metra continues using the UP Lines—Metra *will* continue using them, as UP concedes.

UP plainly was disappointed with the STB's determination to grant trackage rights, which now puts UP in the position of having to negotiate a bilateral resolution—or, failing that, litigate conditions and compensation before the STB. In the interim, however, UP has gotten exactly what it wants to avoid any alleged harm caused by Metra's continued use. It asked the STB to impose conditions from the parties' prior contract to govern liability and indemnity, and the STB awarded UP the precise relief it requested. Metra Mot. Ex. 5.

---

[5]    As Metra explained (Mot. 12), UP previously bargained away its right to exclude Metra from the UP Lines in a series of contracts through which Metra invested hundreds of millions of dollars in the UP Lines. UP responds by misquoting the Northern District of Illinois, which never resolved Metra's contract claims on the merits, and, in the altered quote, did not say that Metra lacked a contractual right to use the UP Lines at "any price." Opp. 16 n.1. Rather, the court *agreed* with Metra that there may be "a price at which the improvements become functionally unavailable." *Commuter Rail Div. of Reg'l Transp. Auth. v. Union Pac. R.R.* 2025 WL 1787514, at *5 (N.D. Ill. June 27, 2025).

Lacking real-world harm, UP offers the specter of an uncompensated "Fifth Amendment taking," which an abeyance in UP's view would "prolong." Opp. 14. But each part of UP's argument is incorrect. As Metra explained when UP raised the same argument (unsuccessfully) to support its stay request, the STB's decision does not raise Fifth Amendment issues. *See* Metra Stay Opposition at 15. Though the "*right* to full compensation arises at the time of the taking," that "*does not* as a practical matter mean that government action or regulation may not proceed in the absence of contemporaneous compensation[,] [g]iven the availability of post-taking compensation." *Knick v. Twp. of Scott,* 588 U.S. 180, 190, 202 (2019). Such "post-taking compensation" is available here.

Nor is UP "uncompensated." Consistent with the STB's instructions (*see* Metra Mot. Ex. 1 at 32), Metra *is* compensating UP on an interim basis. If UP proves it is owed more, it will be paid that amount beginning July 1, 2025.

## CONCLUSION

The Court should hold this matter in abeyance until the STB has resolved Metra's application for terminal trackage rights.

Dated: December 22, 2025        Respectfully submitted,

/s/ Paul W. Hughes
PAUL W. HUGHES
ANDREW A. LYONS-BERG
MARY H. SCHNOOR
EMMETT WITKOVSKY-ELDRED
  McDermott Will & Schulte LLP
  500 North Capitol Street NW
  Washington, DC 20001
  (202) 756-8000

Counsel for the Commuter Rail Division of the
Regional Transportation Authority d/b/a Metra

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief:

(i) complies with the type-volume limitation of Rule 27(d)(2) because it contains 2,598 words; and

(ii) complies with the typeface and type style requirements of Rule 27(d)(1)(E) because it has been prepared using Microsoft Word for Microsoft 365 MSO and is set in New Century Schoolbook LT Std font in a size equivalent to 14 points or larger.

Dated: December 22, 2025                    */s/ Paul W. Hughes*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2025, I electronically filed the foregoing with the Clerk of this Court using the CM/ECF system, and counsel for all parties will be served by the CM/ECF system.

Dated: December 22, 2025                    */s/ Paul W. Hughes*

# Exhibit 6

310520

ENTERED
Office of Chief Counsel
December 15, 2025
Part of
Public Record

**BEFORE THE**
**SURFACE TRANSPORTATION BOARD**

**DOCKET NO. FD 36844**

**COMMUTER RAIL DIVISION OF THE REGIONAL**
**TRANSPORTATION AUTHORITY D/B/A METRA**
**—TERMINAL TRACKAGE RIGHTS—**
**UNION PACIFIC RAILROAD COMPANY**

**UNION PACIFIC RAILROAD COMPANY'S REPLY TO METRA'S**
**REQUEST TO ESTABLISH CONDITIONS AND**
**COMPENSATION**

Christina B. Conlin
James B. Boles
Tonya W. Conley
UNION PACIFIC RAILROAD COMPANY
1400 Douglas Street
Omaha, NE 68179

Raymond A. Atkins
Allison C. Davis
Tobias S. Loss-Eaton
Marc A. Korman
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
(202) 736-8000

*Counsel for Union Pacific Railroad*
*Company*

Dated: December 15, 2025

The Board should deny Metra's request to initiate a conditions and compensation proceeding. Citing the statutory language that conditions the Board's authority to set compensation and conditions upon a lack of agreement between rail carriers, the Board previously required Union Pacific and Metra to undertake a "concerted, good faith effort to reach agreement on terms and compensation for Metra's use of the UP Lines."[1] Union Pacific and Metra are continuing to make progress in their ongoing negotiations. Indeed, just a few days before claiming an impasse—and with no intervening developments—Metra reiterated in a letter to Union Pacific that its goal remains to reach agreement with Union Pacific or to identify any remaining disputed issues by the end of December.

Metra's December 1 request to commence a complex proceeding on compensation and conditions appears driven by a desire to justify abeyance in the pending appeal from the September 3 order. The Board should not allow Metra's appellate strategy to undermine ongoing efforts at private resolution of these issues that could moot some or all of the issues identified in Metra's request.

Further, to the extent that Metra's request suggests that Metra intends to seek an expansion of the Board's September 3 order beyond the UP Lines, the Board should clarify that those issues must be resolved after briefing and *prior to* commencing a compensation and conditions proceeding. It is particularly important for the orderly administration of any future compensation and conditions proceeding that the parties actually know the property for which they are seeking terms and

---

[1] Decision, Docket No. FD 36844, at 33 (STB served Sept. 3, 2025).

proposing compensation. Union Pacific provides its suggestions on a procedural schedule to govern that briefing, as well as preliminary considerations on a procedural schedule for any possible future compensation and conditions proceeding.

Finally, given the intervening order granting access and the progress made in negotiations thus far, Union Pacific suggests that the Board consider Board-sponsored mediation to facilitate agreement between the parties.

## I. Metra's Request to Initiate a Compensation and Conditions Proceeding Should be Denied as Premature.

In the September 3 order, the Board stated that it "expects and encourages [the parties] to undertake a concerted, good faith effort to reach agreement" and declined to impose a deadline by which the parties' negotiations must be completed.[2] Only if "the parties cannot reach an agreement" were they to ask the Board to initiate a compensation and conditions proceeding.[3] This mandate was in recognition of the statute, which provides that the Board may only set conditions and compensation "if the rail carriers cannot agree," 49 U.S.C. § 11102(a). It also prevents needless litigation, thus conserving both party and Board resources.

Yet Metra is short circuiting that Board-directed process by seeking the initiation of a proceeding while, by Metra's own account, *the parties continue to make progress in their ongoing negotiations. See* Metra Request at 3, 5 (filed Dec. 1, 2025) (conceding the parties will continue their negotiations and acknowledging that they are working to "narrowing the issues"). The parties have made progress and continue

---

[2] *Id.*
[3] *Id.*

to do so—reaching common ground on multiple issues and narrowing the gap on others. Indeed, in the short time since the filing of Metra's request to the Board claiming an impasse, the parties have met twice to continue their negotiations on the very topics which Metra claims the Board must resolve, and are scheduled to meet again on December 16.

Just a few days before claiming an impasse—and with no intervening developments—Metra sent Union Pacific a letter providing counteroffers on certain terms and promising a redlined draft agreement, saying that Metra's "goal remains to reach agreement with you or to identify any remaining disputed issue(s) by the end of December."[4] Yet before Union Pacific could even respond—indeed, before Metra even provided the promised redline—Union Pacific learned via its counsel that Metra would be filing a petition at the Board claiming an impasse. Counsel's inquiry regarding this unexplained shift has gone unanswered,[5] though the shift appears related to Metra's desire for an abeyance of the appellate proceeding before the U.S. Court of Appeals for the Eighth Circuit. Specifically, on November 26—the same day Metra was due to provide Union Pacific the promised redline agreement—Metra submitted a filing to Eighth Circuit, taking the position that because Metra filed the

---

[4] Exhibit A, Letter from J. Milano (Metra) to L. Stark (Union Pacific) dated Nov. 21, 2025. Union Pacific is redacting all information about the substance of their current negotiations from the letter.

[5] Exhibit B, Email from R. Atkins (counsel for Union Pacific) to P. Pfolh (counsel for Metra) dated Nov. 21, 2025.

request to initiate before the STB, the Eighth Circuit litigation should be held in abeyance.[6]

The timing strongly suggests that Metra is claiming to have hit a roadblock in negotiations (even as it continues negotiating) so it can justify its abeyance request to the Court. The Board should not allow Metra's appellate strategy to needlessly undermine ongoing efforts at private resolution of these issues—efforts that were mandated by the Board. The parties should finish their concerted, good faith effort to come to mutual agreement before initiating a complex proceeding on conditions and compensation. Indeed, Union Pacific received Metra's most recent redline proposal on December 9, 2025, and is reviewing that with plans to respond shortly.

Allowing the parties to continue ongoing productive negotiations is consistent with the statutory recognition that the Board may only set conditions and compensation "if the rail carriers cannot agree," 49 U.S.C. § 11102(a); the Board's long-standing preference for the private resolution of disputes whenever possible;[7] and judicial economy.

Given Metra's stated goal to allow negotiations to continue through the end of this month and the ongoing productive negotiations, the Board should decline to initiate a proceeding at this time and instead require the parties to submit their

---

[6] Metra's Response to Respondents' Status Report ¶ 5, *Union Pac. R.R. v. STB*, No. 25-2919 (8th Cir. Nov. 26, 2025); *see also* Metra Motion to Hold in Abeyance and Suspend the Briefing Schedule, *Union Pac. R.R. v. STB*, No. 25-2919 (8th Cir. Dec. 5, 2025).

[7] *See, e.g., Central Tex. & Colo. River Ry.—Aban. Exemption—In McCulloch, San Saba, Mills, & Lampasas Cntys., Tex.*, Docket No. AB 1272X, at 3 (STB served July 9, 2020).

status report under the schedule mandated by the September 3 order.[8]  That would be consistent with Metra's previously stated timeline to allow negotiations to continue through the end of December, at which point the parties can assess the state of negotiations and, if necessary, which issues they believe need to be submitted to the Board for resolution and discuss proposed procedural schedules.

## II.     Any Request to Expand the Scope of the September 3 Order Must be Resolved First.

Metra identifies five disputed issues for resolution in a compensation and conditions proceeding.  Yet the first of those five issues is neither compensation nor a condition.

Metra asks the Board to address the "scope of the trackage rights."[9]  Metra provides no other context, but based on Metra's prior rebuttal filing, Union Pacific assumes that Metra will seek to expand the Board's September 3 order from covering the UP Lines to a potentially wide array of other real estate and/or facilities.  On rebuttal, Metra proposed interim terms and conditions that would have expanded the scope of relief sought beyond the UP Lines to other facilities such as parking lots and offices.[10]  Union Pacific, in its motion to strike, noted the host of issues relating to this request, including Metra's inability to even identify the "other real estate and facilities" to which it sought expanded access.[11]  While the Board did not strike

---

[8] In a simultaneously filed motion for protective order, Union Pacific is seeking confirmation that it need not respond to Metra's discovery requests at this time.

[9] Metra Request at 3.

[10] Metra Rebuttal at 44.

[11] Union Pac. Mot. To Strike, at 2 (filed June 25, 2025).

Metra's proposed interim terms, it did emphasize that those problematic issues identified by Union Pacific need not be addressed "because the Board is not entertaining either party's interim proposal" and "ha[d] not relied on the evidence referenced in UP's motion in this decision."[12]

Metra's application for terminal trackage rights "relate[d] to the three UP Lines," which it defined in its application as "the UP-N line," the "UP-NW line" "with a branch to McHenry," and "the UP-W line."[13]  Because Metra's application was for the three UP Lines, the parties' briefing—and thus the Board's decision—likewise were limited to the UP lines.  *See, e.g.,* September 3 Order at 19–20, 27, 28 (addressing, e.g., "each UP Line," the "line segments," "each Line," the "UP Lines", and "the tracks").

Any attempt by Metra to expand the scope of the September 3 order beyond the UP Lines must be resolved after a request by Metra that identifies with specificity the facilities to which it seeks access and an opportunity for Union Pacific to respond. Whether any additional facilities are "terminal facilities" and if so whether their use is practicable and in the public interest are issues that must be addressed by the Board after an opportunity for briefing.

Further, it is essential that any request for expanded access be resolved separately for the orderly administration of any future conditions and compensation

---

[12] September 3 Order at 13.

[13] Metra Appl. 7–8; *see also* Metra First Set of Discovery Requests, Definitions ¶ 14 (defining the UP Lines "for which Metra has applied for terminal trackage rights" as being the UP-North, UP-Northwest, and UP-West "railroad lines of UP.").

proceeding. Such a proceeding will be complicated enough for just the UP Lines. Terminal trackage rights compensation proceedings are notoriously complex and lengthy and this case is unique in that it involves joint use between a freight and commuter carrier over multiple lines. Knowing the scope of the property at issue is essential to being able to litigate and analyze the compensation that is owed for that property. The nature of the facilities at issue will have a direct bearing on the appropriate methodology for compensation and the necessary terms relating to access to that property. Resolving the scope of the property at issue will focus discovery and the submission of evidentiary issues, thus conserving Board and party resources and ensuring the efficient administration of this proceeding consistent with the Board's announced priorities.[14]

Union Pacific thus suggests the following schedule for addressing any potential request for expanded access beyond the UP Lines:

| | |
|---|---|
| Day 0 | Metra opening submission, identifying with specificity any additional terminal facility(ies) to which it seeks access |
| Day 30 | Union Pacific reply submission |
| Day 50 | Metra rebuttal submission |

---

[14] *STB Gathers More Than 100 Ideas From Legal Practitioners to Streamline Board Processes* (June 10, 2025), https://www.stb.gov/news-communications/latest-news/pr-25-22/ (announcing areas of focus for ensuring efficient proceedings, including discovery).

This schedule would be consistent with the briefing schedule the Board adopted in its March 20, 2025 decision for the submission of argument and evidence regarding Metra's application for access to the UP Lines.[15]

After issuing a decision on the property subject to the September 3 order, the Board would if necessary address compensation and conditions on request. Without the Board having addressed any potential request for expanded access, it is difficult to propose a definitive procedural schedule given uncertainty regarding the scope of needed discovery and issues relating to compensation methodologies, which may vary depending on the property at issue.

If, however, the Board were to decline to resolve issues regarding scope in advance, then Union Pacific offers the following preliminary considerations on a procedural schedule. First, any such schedule should clarify that the proceeding begins upon a Board decision granting a request to initiate a proceeding.

Second, discovery should commence upon issuance of the order initiating the proceeding (as explained further in Union Pacific's simultaneously filed motion for protective order). Metra's proposed 60-day period would almost certainly be insufficient. In another pending proceeding on compensation for trackage rights, the discovery period was 90 days—and that proceeding involves only a single line, no questions about scope, and the more typical scenario where use is exclusively by freight railroads.[16] If the scope of the order were undetermined going into discovery,

---

[15] Decision, Docket No. FD 36844, at 2 (STB served Mar. 20, 2025).

[16] *See, e.g., Atchison, Topeka & Santa Fe Ry.—Operating Rights—S. Pac. Transp. Co.,* Docket No. FD 22218 (STB served July 13, 2023).

the parties will be required to expend significant and potentially unnecessary resources propounding and producing discovery concerning compensation and conditions for facilities that may or may not be subject to the September 3 order. Union Pacific does not concede that *SSW Compensation* is an appropriate methodology at this time, given the unspecified nature of the facilities to which Metra may or may not seek access. And depending on the facilities at issue, it may behoove the Board and the parties to resolve methodological disputes first, as it has in other proceedings.[17]

Finally, it is Union Pacific's understanding that conducting an additional valuation could take approximately six months, depending on the scope of the property that would need to be analyzed.[18] This is yet another reason it would be essential for any issues regarding scope to be resolved in advance.

## III. Board-Sponsored Mediation May Help Facilitate Agreement Between the Parties.

Prior to Metra's filing of its application for terminal trackage rights, the parties engaged in Board-sponsored mediation under 49 U.S.C. § 28502 and 49 C.F.R. Pt. 1109. That mediation concluded on January 31, 2025.

Since that time, the Board has entered an order granting terminal trackage rights and the parties have made progress in their negotiations. Union Pacific agrees

---

[17] *See, e.g., Atchison, Topeka & Santa Fe Ry.—Operating Rights—S. Pac. Transp. Co.,* Docket No. FD 22218 (STB served May 15, 2023).

[18] Prior to Metra's filing an application at the Board, Union Pacific received a valuation analysis of the land associated with the UP Lines. However, that report did not include a valuation of track structure or property other than the UP Lines.

with Metra's assessment that the parties are in substantial agreement on a range of issues, including compensation-related issues.

While the parties have not yet reached substantial agreement on, for example, indemnity provisions, their subject matter experts have been meeting to address those issues and Union Pacific received language from Metra on December 9, 2025, in a proposed redline agreement. With regard to the access fee, the parties have closed the gap between them and continue to exchange proposals. Union Pacific is reviewing Metra's December 9 redline in conjunction with Metra's November 21 proposal and plans to respond shortly.

Given the progress that has occurred since last year's mediation, Union Pacific is amenable to engaging in Board-sponsored mediation to facilitate agreement between the parties.

The restriction at 49 C.F.R. § 1109.3(b)—that the Board will not order mediation more than once in any proceeding unless all parties mutually request another round—should not apply, as the parties prior attempt at mediation occurred in Docket No. FD 36800 prior to Metra's application to the Board. Even if it did apply, the Board has waived that restriction in analogous circumstances. *See BNSF Ry.— Terminal Trackage Rights—Kansas City S. Ry. & Union Pac. R.R.*, Docket No. FD 32760 (Sub-No. 46) (STB served July 3, 2019) (waiving that restriction when the previous attempt at mediation had occurred prior to the Board granting an application for terminal trackage rights).

## CONCLUSION

For the reasons set above, the Board should deny Metra's request to initiate a conditions and compensation proceeding at this time.

Respectfully submitted,

/s/ Raymond A. Atkins

| | |
|---|---|
| Christina B. Conlin | Raymond A. Atkins |
| James B. Boles | Allison C. Davis |
| Tonya W. Conley | Tobias S. Loss-Eaton |
| UNION PACIFIC RAILROAD COMPANY | Marc A. Korman |
| 1400 Douglas Street | SIDLEY AUSTIN LLP |
| Omaha, NE 68179 | 1501 K Street, N.W. |
| | Washington, DC 20005 |
| | (202) 736-8000 |

*Counsel for Union Pacific Railroad Company*

Dated: December 15, 2025

## CERTIFICATE OF SERVICE

I hereby certify that, on this 15th day of December 2025, the foregoing filing was served by first-class mail or more expeditious means on all parties of record in this proceeding.

*/s/ Marc A. Korman*
Marc A. Korman

# Exhibit 7

# CONFIDENTIALITY AGREEMENT FOR SETTLEMENT DISCUSSIONS BETWEEN METRA AND UNION PACIFIC RAILROAD COMPANY

Metra and Union Pacific Railroad Company hereby agree as follows as to the confidentiality of their settlement discussions that begin/began June 30, 2025.

1. All statements made, or written materials provided at or in connection with the June 30, 2025, meeting and subsequent meetings ("communications") shall be deemed made, said, or provided in the context of compromise or settlement discussions and shall be utilized only for such purposes.

2. Such communications are intended to be confidential and may be disclosed only to the parties' officers, directors, attorneys, and agents (including consultants) who agree to maintain the confidentiality of the discussions.

3. Such communications shall not be admissible or be the subject of any discovery on any issue that has been or may be brought before any court, arbitrator, the United States Surface Transportation Board or any other governmental agency, or tribunal and shall not be used for any purpose in any pending or future proceeding between or involving either or both of the parties.

4. Such communications shall not be deemed a waiver (whether specific, subject-matter, or total) of the attorney-client privilege, the work-product doctrine, the settlement privilege, Federal Rule of Evidence 408, or any other basis for opposing discovery.

5. To the extent that such communications disclose information that would be protected by the attorney-client privilege, work-product doctrine, or any other basis for opposing discovery but for their disclosure in these settlement discussions ("protected information"), it shall be a violation of this agreement for a party to obtain or use protected information for any purpose other than the compromise or settlement discussions referenced in this agreement.

6. The parties shall not refer to such communications (including protected information) in any way in any discovery requests, presenting testimony, or otherwise pursuing issues and claims involving the other party before any court, arbitrator, governmental agency, or tribunal.

7. Except as specified above, this agreement shall not be construed to prevent either party from obtaining in discovery information that it is otherwise entitled to obtain.

8.     Nothing in this agreement shall be construed to prevent or limit either party from using for any lawful purpose information that such party has created or generated, whether or not such information has been shared with or furnished to the other party in connection with the settlement discussions contemplated by this agreement, provided that such use does not reveal to a third party the content of the parties' settlement discussions.

9.     Nothing in this agreement shall be construed to prevent or limit either party from using for any lawful purpose information (including, but not limited to, ideas, concepts, know-how, techniques and methodologies) that: (a) is public; (b) becomes generally available to the public other than as a result of a disclosure by receiving party or its representatives; (c) was rightfully available to receiving party on a non-confidential basis prior to its disclosure to receiving party; (d) becomes available to receiving party from other sources not known to receiving party to be bound by confidentiality obligations to non-disclosing; or (e) is disclosed pursuant to governmental action or order of a court of competent jurisdiction and an appropriate protective order or its equivalent is not applicable or available. Provided, however, before any disclosure by a receiving party is made pursuant to paragraph 9(e), the receiving party shall first notify the disclosing party and give the disclosing party no fewer than ten (10) days in which to seek to object to the disclosure or to obtain an order protecting confidential information.

Agreed to this August 12, 2025.

For Metra:

_____
Name

JIM PERSINSKI
Print

CEO /ED
Title

8·14·25
Date

For Union Pacific Railroad Company

_____
Name

Liisa Stark
Print

VP Public Affairs
Title

8/12/2025
Date

# Exhibit 8



# SLOVER & LOFTUS LLP

### ATTORNEYS AT LAW

#### PETER A. PFOHL

310572

December 18, 2025

ENTERED
Office of Chief Counsel
December 18, 2025
Part of
Public Record

<u>Via E-Filing</u>
Ms. Cynthia T. Brown
Chief of Case Administration
Office of Chief Counsel
Surface Transportation Board
395 E Street SW
Washington, DC 20423

      Re:    FD 36844, *Commuter Rail Division of the Regional*
                *Transportation Authority d/b/a Metra – Terminal*
                *Trackage Rights – Union Pacific Railroad Company*

Dear Ms. Brown:

      Metra responds to UP's December 15, 2025, reply to Metra's request that the Board establish conditions and compensation for trackage rights, pursuant to 49 U.S.C. § 11102(a). This response addresses two requests by UP that are outside the scope of Metra's filing: (1) a proposed bifurcation of the proceeding to address UP's incorrect "assum[ption]" that Metra is requesting "expanded access" to UP's facilities beyond that granted in the Board's September 3 Decision (Reply at 5-9), and (2) an additional mediation (*id.* at 9-10) – both of which Metra is entitled to respond to under 49 C.F.R. § 1104.13. Metra also addresses UP's misuse of settlement materials in violation the parties' confidentiality agreement and misstatement of related facts, for which fairness and good cause warrant Board acceptance of Metra's response.

**A.**    **UP's Request to Indefinitely Postpone Establishment of Conditions and Compensation Includes Misused Confidential Communications and Misstated Facts**

      UP does not take issue with Metra's proposed procedural schedule, which comports with the Board's statutory time limit for determinations under 49 U.S.C. § 11102(a), other than the time needed for discovery. UP instead urges the Board to require the parties to continue to negotiate, indefinitely, before initiating proceedings to establish the conditions of use and compensation.

      While the parties have been negotiating for three-and-a half months after the September 3 Decision, and before that, since 2019 – along with four-and-a-half

months of STB-sponsored mediation – UP claims Metra's request is "short-circuiting" the negotiations process. UP's claims are premised on selective excerpts from a confidential letter sent by Metra as part of the parties' settlement negotiations and an inaccurate chronology intended to support UP's allegation that Metra timed its request to the Board as part of its "appellate strategy" before the U.S. Court of Appeals for the Eighth Circuit.

*First*, Metra's November 21 letter to UP (attached as Exhibit A to UP's Reply) is subject to the parties' confidentiality agreement. Paragraph 6 of that agreement provides that: "[t]he parties *shall not refer to such communications (including protected information) in any way in any discovery requests, presenting testimony, or otherwise pursuing issues and claims involving the other party before any court, arbitrator, governmental agency, or tribunal*" (emphasis added). UP has done exactly what the parties' agreement prohibits. UP's redaction of some content does not cure its violation. The intent of the confidentiality agreement was to allow the parties as part of their ongoing negotiations to exchange information in trust, which UP has violated. Without repeating UP's violation, Metra states that the selected information included with UP's Reply was taken out of context. UP has been on notice since before the November 21 letter, as described below, that Metra planned to ask the Board in December to intervene and set conditions and compensation, if the parties remained at an impasse, which is exactly what occurred.

*Second*, contrary to the inaccurate chronology presented in its Reply (at 2-4), UP did not "learn[] via its counsel that Metra would be filing a petition at the Board claiming an impasse" only after Metra's November 21 letter. On the contrary, Metra repeatedly had advised UP over the course of their post-decision negotiations that Metra's goal was to reach agreement on all issues *by December*. Metra also specifically and unequivocally advised UP's negotiating team, which included UP in-house counsel, of the planned December filing during a virtual meeting on November 18, *before* Metra sent the November 21 letter. The telephonic communication with UP's outside counsel referenced in the Reply, which occurred on November 25, was an additional pre-filing courtesy.[1]

UP's related argument that "[t]he timing strongly suggests that Metra is claiming to have hit a roadblock in negotiations" in support of its "appellate strategy" (*id.* at 4) falls apart, as with many inaccurate narratives, because the pieces do not fit. It bears noting, in this respect, that Metra actually made its November 26 filing to the Eighth Circuit, which UP references (*id.* at 3), to correct UP's misstatement to the Appellate Court the day before regarding Metra's plans to file with the STB. In its November 25 filing with the Eighth Circuit, and in

---

[1] UP's reference to its counsel's follow-up email (Reply at 3, n.5) is misdated. The email was sent on November 26, 2025, not November 21.

reference to the conditions and compensation phase of this proceeding, UP stated that "[t]here is no deadline for that process, and neither party has asked the Board to intervene," even though UP was on notice that Metra intended to file within the week.[2] Metra corrected the record with the Eighth Circuit the next day, as follows: "Metra previously advised UP and UP is on notice that Metra in December will file a petition asking the STB to proceed to the conditions and compensation for Metra's use of the UP Lines. That filing will be made on December 1, 2025, and the schedule Metra will propose to the STB, consistent with the underlying statute, will call for completion of the second phase of the proceeding within 180 days."[3]

Metra's December 1, 2025, request identified five major remaining issues for the Board to resolve. UP's Reply does not dispute that these essential issues are at an impasse. There is no inconsistency in Metra's willingness to continue negotiations through the end of the year, and potentially beyond, which the proposed schedule calls for, while also recognizing that the parties have reached an impasse as to major areas of dispute and that the process for Board resolution, consistent with the statutory framework, should begin now.

**B.      UP's New Requests to Bifurcate and Mediate Are Unsupported and Contrary to the Public Interest**

UP seeks bifurcation based on its incorrect "assum[ption]" that Metra plans to ask the Board to "expand the scope of the September 3 order" to cover "a potentially wide array of other real estate and/or facilities." Reply at 5. UP asserts that this undefined "expanded access," if sought, would exceed the scope of the September 3 Decision. On this basis, UP requests that the Board extend and bifurcate this proceeding, so that this assumed issue, which has not been raised and will not be, can be resolved before the Board can determine conditions and compensation for use of the facilities under 49 U.S.C. § 11102(a).

To address UP's incorrect assumption, Metra's request did identify "scope of trackage rights" as one of the remaining disputed issues to be addressed, but Metra is not attempting to "expand the scope" of the trackage rights granted by the Board in any way. The September 3 Decision makes clear that terminal facilities are to be broadly construed for passenger traffic. *Id.* at 14 & n.28. The Decision framed "the concept of a terminal area in functional terms" as it "may also encompass activities related to the transport of passengers" and "what is 'necessary for the convenience of passengers.'" *Id.* The Decision further explained that references in cases to

---

[2] UP Resp. to Respondents' Status Report ¶ 11, *Union Pac. R.R. v. STB*, No. 25-2919 (8th Cir. Nov. 25, 2025).

[3] Metra Resp. to Respondents' Status Report, ¶ 5, *Union Pac. R.R. v. STB*, No. 25-2919 (8th Cir. Nov. 26, 2025).

freight-related facilities "are not delimiting because they did not involve functions or facilities pertaining to the transportation of passengers." *Id.* (citations omitted).

The appropriate delineation of the facilities involved in actual contract language has been a point of discussion between the parties. Metra's reference to the scope of the rights in its request simply reflects the reality that the Board likely will need to determine the "functions and facilities" covered by the Decision in the context of Metra's operations and the implementing terms of the parties' trackage rights agreement. If UP believes that the trackage rights agreement terms that Metra proposes include facilities that are beyond the scope of relief provided by the Board, it will have every opportunity to challenge Metra's position during the conditions and compensation phase, just as Metra will have the opportunity to establish that such terms are within the Board's scope of relief. UP provides no relevant support for its novel bifurcation request, and Metra is aware of none. *Cf. Norfolk S. Ry. Co. – Petition to Set Trackage Rights Compensation – Norfolk & Portsmouth Belt Line R.R. Co.*, FD 36223 (STB served Mar. 29, 2019), at 6 (denying bifurcation); *New England Cent. R.R., Inc. – Trackage Rights Order – Pan Am S. LLC*, FD 35842 (STB served Feb. 12, 2016), at 5 (denying bifurcation).

Metra also opposes UP's mediation proposal. The parties mediated previously at UP's request from August 14, 2024, to January 31, 2025, without success prior to the grant of trackage rights, when UP was negotiating from the position that Metra had no independent right to use its lines. Metra cautioned at the time that UP's July 31, 2024 request for mediation, including over "the fee Metra will pay for access to Union Pacific's tracks and other property used for commuter rail service" (App. for Mediation at 3) was "premature" and the mediation "would become stalled at the outset" because of a lack of "complete and transparent supporting information" from UP. Metra Resp. in Opp'n to UP App. for Mediation, FD 36800 (filed Aug. 8, 2024). UP now seeks to repeat that experience with respect to the conditions and compensation for Metra's trackage rights. While they have made progress on some elements in the interim, it is evident that the two sides regardless of how much longer they negotiate will not reach agreement on other issues, including the major disputed issues identified in Metra's request. A second mediation is unlikely to add anything other than delay.

With its mediation request, UP would have the Board "behave like Penelope, unravelling each day's work to start the web again the next day." *Western Coal Traffic League v. I.C.C.*, 785 F.2d 1408, 1411 (D.C. Cir. 1984). More troubling is UP's statement to the Eighth Circuit earlier this week that, if the Board commences a conditions and compensation phase, as Metra has requested: "all signs suggest

that such a proceeding will not take months to resolve, *but years.*"[4] The governing statute, 49 U.S.C. § 11102(d), provides for resolution within 180 days. Metra crafted its proposed schedule to allow the Board to meet that requirement. UP has not disagreed with Metra's schedule or proposed one of its own, other than to propose one for a bifurcated schedule on an extraneous assumed issue.

Timely initiation and resolution of the conditions and compensation for Metra's trackage rights is vital for Metra and should be important for UP, as well, which has claimed that it is being undercompensated and is otherwise at risk pending final conditions and compensation. Metra sought the "statutorily available rights to operate a public service over the UP Lines for a compelling reason: so that it can provide that service to the public on transparent, reasonable, and bilateral terms and with the *certainty* required, as Congress understood, to run a railroad." September 3 Decision, at 26 (emphasis added). "Under these circumstances," as the Board determined, "the public interest requires greater *certainty* and granting Metra terminal trackage rights is warranted to ensure the provision of adequate rail service to the public." *Id.* at 30 (emphasis added). Delay can only put that certainty out of reach.

Metra will reply separately to UP's Motion for Protective Order from discovery by January 5, unless the Board rules first, *e.g.*, by establishing a procedural schedule. UP's Motion presumes adoption of the positions in its Reply and is deficient for the same reasons.

Respectfully submitted,

Peter A. Pfohl
Robert D. Rosenberg
*Attorneys for the Commuter Rail Division of the*
*Regional Transportation Authority d/b/a Metra*

---

[4] UP Resp. in Opp'n to Respondents' and Metra's Abeyance Mots., at 4, *Union Pac. R.R. v. STB*, No. 25-2919 (8th Cir. Dec. 15, 2025) (emphasis added).

**CERTIFICATE OF SERVICE**

I hereby certify this 18th day of December 2025, I caused a copy of the foregoing document to be served by first-class mail, postage prepaid, or by more expeditious means to all parties of record.

/s/ Peter A. Pfohl

# Exhibit 9

1     IN THE UNITED STATES DISTRICT COURT
      NORTHERN DISTRICT OF ILLINOIS
2            EASTERN DIVISION

```
3   COMMUTER RAIL DIVISION OF THE   )  Case No. 25 C 2439
    REGIONAL TRANSPORTATION         )
4   AUTHORITY,                      )
                                    )
5              Plaintiff,           )
                                    )
6         v.                        )
                                    )
7   UNION PACIFIC RAILROAD          )  Chicago, Illinois
    COMPANY,                        )  July 16, 2025
8              Defendant.           )  9:23 a.m.

9

10        TRANSCRIPT OF TELEPHONIC PROCEEDINGS - STATUS
            BEFORE THE HONORABLE JOHN J. THARP, JR.

11

    APPEARANCES:
12

13  For the Plaintiff:    McDERMOTT WILL & EMERY LLP
                          BY:  MR. EMMETT WITKOVSKY-ELDRED
                               MS. MARY H. SCHNOOR
14                             MR. PAUL W. HUGHES
                          500 N. Capitol Street NW
15                        Washington, DC 20001

16                        McDERMOTT WILL & EMERY LLP
                          BY:  MR. MATTHEW MADDEN
17                        444 W. Lake Street, Suite 4000
                          Chicago, Illinois 60606
18

19  For the Defendant:    SIDLEY & AUSTIN LLP
                          BY:  MR. BRUCE R. BRAUN
20                             MR. RODNEY F. RODHEIM
                               MR. CHARLES K. SCHAFER
21                        1 S. Dearborn Street
                          Chicago, Illinois 60603

22  For the Defendant:    SIDLEY & AUSTIN LLP
                          BY:  MR. TOBIAS S. LOSS-EATON
23                        1501 K Street NW
                          Washington, DC 20005
24

25
```

1    APPEARANCES:  (Cont'd)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20    Court Reporter:          Laura LaCien, CSR, RMR, F/CRR
                               Official Court Reporter
21                             219 S. Dearborn Street, Room 2304A
                               Chicago, Illinois 60604
22                             Telephone:  (312) 408-5032
                               laura_lacien@ilnd.uscourts.gov
23
                               *   *   *   *   *
24
                        PROCEEDINGS REPORTED BY STENOTYPE
25       TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

1    (Proceedings heard in open court:)

2        COURTROOM DEPUTY:  This Court is now in session.

3    Calling case 25 CV 2439, Commuter Rail Division versus Union

4    Pacific.

5        Counsel, please put your appearances on the record

6    beginning with the plaintiff.

7        MR. HUGHES:  Good morning.  This is Paul Hughes of

8    McDermott, Will & Emery for the plaintiff Metra.  With me, I

9    have my colleagues Matthew Madden, Mary Schnoor, and Emmett

10   Witkovsky-Eldred.

11       THE COURT:  All right.  Good morning.

12       MR. BRAUN:  And good morning.  For the defendants

13   Union Pacific, Bruce Braun from Sidley Austin along with my

14   colleagues Tobias Loss-Eaton and Andy Rodheim.

15       THE COURT:  All right.  Good morning.  I set this

16   status hearing to check in with the parties having ruled on the

17   preliminary injunctive relief requested by Metra.  And I've

18   also been advised that the STB proceeding is continuing but

19   that the preliminary injunctive relief was denied there as well

20   so I want to assess where we need to go at this point.

21       Perhaps not surprisingly, the parties seem to have a

22   difference of opinion about how this case should move forward

23   or -- whether it should move forward, I guess, in the -- at

24   least in the short run.

25       Let me -- I've read your joint status report but I'll

1   give you the opportunity to elaborate or further update any of

2   the points that you've made there.  We'll start for Mr. Hughes

3   for the plaintiff.

4           MR. HUGHES:  Thank you, your Honor.

5           Our position as we set forth in the status report is

6   that we would respectfully request either a brief abeyance or a

7   continuance until we receive the STB ruling which has a

8   statutory deadline of September 3rd.  We submit that this would

9   best preserve party and judicial resources.  We think there are

10  a few reasons in favor of this.

11          First, if Metra prevails, we've stated clearly in our

12  prior pleadings that we would withdraw at least some, if not

13  all, of our antitrust claims at minimum.  And given that it's

14  just a matter of weeks until we learn what happens with the

15  STB, we think it's a best use of resources to wait and see what

16  the STB does before we and UP continue to brief the antitrust

17  claims and ask this Court to resolve them.

18          The second is that if the STB sets new trackage

19  conditions, that may practically resolve the dispute among the

20  parties which may render continued action unnecessary and we

21  think that it's appropriate to wait to see what the STB does on

22  September 3rd.  I think that's consistent with the Court's

23  questions of me at the PI hearing as to if there could be any

24  overlap between them.  We do think -- and we talked about this.

25  We do have contract claims that are independent.  We -- that

said, if the STB grants relief, it would certainly have pretty

concrete implications for this case moving forward and we think

waiting a few weeks to see what the STB does would make a lot

of sense.

The third is UP is pretty confident as they've said in

their JSR that they'll prevail before the STB.  We disagree

with that.  But whatever happens out of the STB, I think we're

going to have a different factual circumstance and we'll likely

have changed conditions and I think it's more likely than not

that we or UP will be looking to file amended or supplemental

pleadings at that point.  And given that our alternative

request at this juncture which I don't think UP opposes is that

if we go forward with litigation, that we need to file a

supplemental pleading to address the new facts that have

occurred since our first amended complaint which is principally

related to the condition of entry.  We'd be looking at a real

moving target if we file that supplemental pleading now in the

next couple weeks and then September 3rd comes, things change

again and we'd be back before the Court asking for permission

for either a supplemental or an amended complaint at that

juncture.  So for all those reasons, we think there's a lot of

efficiency to be gained by what we think is a pretty brief

abeyance or continuance.

We don't think there's any prejudice that goes the

other direction.  UP's status report in our view just simply

1   expresses their confidence in their position both before the

2   STB and this Court.  And, you know, respectfully we, of course,

3   disagree with that on the merits but we don't see why that has

4   any material prejudice for waiting until we see what the STB

5   does before we take further litigation steps here.

6          I think UP acknowledges that if we proceed as they

7   request with continuing on a motion to dismiss, we are unlikely

8   to have a decision from this Court by September 3rd.  And given

9   that we would be having to file supplemental briefs at minimum

10  and potentially pleadings with the Court following September

11  3rd, we think the most efficient thing to do is to await a

12  decision coming in a few weeks and then put our positions

13  before the Court once we have that decision in hand.  We'd

14  propose seven days after we do a new status report where we'll

15  either have an agreed position or if we have competing

16  positions, we'd put that before the Court to ask for direction

17  then.  So that, your Honor, is our principal position.

18         The alternative is if the Court were to disagree, we

19  do believe we need to supplement the complaint to bring before

20  the Court the conditions of entry.  And then since we've even

21  filed the JSR, I understand today Metra has sent a letter to

22  Union Pacific communicating the amount that Metra is paying for

23  July track access to UP which is consistent with the prior

24  agreement and so we would also be needing to add facts around

25  things that are happening as recently as -- actually, I think

1  the letter was dated yesterday.  Sorry.  The communication went

2  across yesterday.

3       So -- and although that, I think, points us back to

4  why we believe a brief pause of a few weeks would allow a few

5  of these issues to settle and for us to not be litigating

6  against a moving target in the short term and that we'd be more

7  effective coming back before this Court in a few weeks once we

8  have an STB decision to provide a pathway forward.

9       So, your Honor, that's Metra's position.  I'd be happy

10  to answer any questions.

11       THE COURT:  Okay.  All right.  I may have questions

12  but let me hear first from UP.

13       MR. BRAUN:  Thank you, Judge Tharp.  I'm going to turn

14  it over to my colleague Tobias Loss-Eaton.  Before I do that, I

15  neglected to mention that Chad Schafer from Sidley is also

16  appearing on the call.

17       THE COURT:  All right.  Thank you.

18       MR. LOSS-EATON:  Good morning, your Honor.  Tobias

19  Loss-Eaton.

20       Our position is that the most efficient way to proceed

21  here is -- as Mr. Hughes says is his fall-back position that

22  Metra should file a supplemental pleading to bring the facts up

23  to date to where we stand now.  I think we're -- we're pretty

24  much aligned on that.  Obviously some new facts have occurred

25  since Metra's operative pleading including in particular the

1  issuance of the condition of entry, or CLE.

2        We don't think that it makes sense to hold this case

3  in abeyance until the STB rules. Now certainly I take

4  Mr. Hughes's point that we don't want to be aiming at a moving

5  target and we don't disagree with that in principle but our

6  view is that nothing the STB can do here will add or change the

7  issues presented. I think the most that the Board could do

8  even if it rules in Metra's favor is subtract issues from the

9  case and not all of them and probably not even any complete

10 claims.

11       As to the contract and antitrust claims that are

12 currently in the case, I haven't heard Mr. Hughes address the

13 fact that Metra's operative pleading alleges completed

14 violations of contractual obligations and completed violations

15 of the Sherman Act and seeks money damages on that basis. I

16 don't think anything the STB could do in a forward-looking

17 decision about access rights could address these alleged past

18 violations for which Metra seeks retrospective relief.

19       And then even as to the forward-looking aspect of

20 those claims, our view of course is that the antitrust claims

21 are foreclosed whatever the STB does. But maybe more

22 importantly than that, I don't think that anything the STB does

23 can resolve or take off the table the validity of the condition

24 of entry, which I think we all agree now is really a key issue

25 in the case. If Metra does not prevail at the STB as of course

1    we say is likely, then the CLE really is the whole case because

2    at that point the question is going to be, you know, what

3    governs going forward and we will all want I think a prompt

4    decision resolving that question, if possible. But even if

5    Metra wins at the STB and secures an order granting terminal

6    trackage rights over some part of UP's network, of course it

7    may not cover all of the tracks that Metra wants access to in

8    which case the CLE's validity will still matter, even if it

9    does, though, there's the retroactivity problem.

10           Our view is that the STB can't retroactively impose

11   terms and conditions at all and even if it could, it couldn't

12   override the CLE if the CLE were valid. So in that situation,

13   the CLE's validity is an input for the STB's decision. It's

14   not a downstream question.

15           So when you take all of that into account, the most

16   the STB can do is narrow the issues by picking off certain

17   aspects of Metra's claims and that's something that we don't

18   need additional pleadings to address. If we go forward now and

19   Metra files a supplemental complaint, we would brief a motion

20   to dismiss. If the STB actually rules in early September, then

21   I think the most you would need from us would be essentially,

22   you know, a notice of supplemental authority or something like

23   that to say -- you know, of course, if we prevail, then it will

24   just say nothing has changed, the legal landscape is exactly

25   the same. If Metra prevails in some way, then it will say you

no longer have to decide, you know, Paragraphs X through Y, but I don't think it actually would change the factual landscape in the way that Mr. Hughes has suggested, although it's possible I'm missing something that he can explain. And so really then the abeyance that Metra is asking for is just delay ultimately without much benefit in terms of efficiency and without moving us closer towards a resolution here.

I will also note that it is not guaranteed that the STB will issue a decision by early September. There is a statutory deadline. In recent years, though, the STB has been notorious for missing deadlines and resolving cases extremely slowly. Now the current chair of the agency has taken a firm line on speeding up its adjudication process so certainly I think we all hoped that we will see a decision by early September but there is precedent for that not happening.

In the same vein, the STB does like to defer commercial disputes to courts disputes involving contracts whenever it can. So it's possible that the Board will feel like the pressure is really off now that this Court and the STB have both denied interim relief and operations have continued. So again, we may be talking about a little bit longer than just a few weeks.

As far as, you know, prejudice goes, really our view is essentially that Metra having brought both of these proceedings at the same time, pursued them in parallel, having

1  argued in the TRO PI proceedings that the STB case is separate

2  from the contractual rights that Metra seeks to vindicate here

3  can't now insist that this case be put on ice even as it claims

4  that Union Pacific may owe it hundreds of millions of dollars

5  all while the parties are trying to negotiate a commercial

6  resolution still.

7          Now, you know, that doesn't necessarily mean that even

8  if you go with us on what's to happen next but we'll have an

9  answer on all these questions by September but we would at

10 least be moving in that direction more efficiently.  And if

11 Metra really feels like it should be waiting until the STB acts

12 before it pursues claims, it is free to voluntarily dismiss

13 some or all of its claims now which it can always refile if the

14 factual universe really changes.  So for all of those --

15          THE COURT:  Well -- I'm sorry.  Go ahead.

16          MR. LOSS-EATON:  No.  Please, go ahead.

17          THE COURT:  Well, that was a question I had, that you

18 end up -- or the status report ends up with UP's suggestion

19 that Metra can file a voluntary dismissal without prejudice and

20 accomplish what it's seeking to accomplish but that's -- that

21 argument can cut in two directions.  If that's, in fact, true,

22 then what difference does it make?

23          MR. LOSS-EATON:  Well, really from our perspective,

24 your Honor, Metra is trying to have it both ways, you know;

25 right.  They sued us.  They chose to sue us at the same time

1  they were seeking relief from the STB.  They chose not to wait

2  until the STB acted.  They told you at the TRO PI stage that

3  only the Court could grant them the relief that they needed and

4  now they want this litigation including the various claims

5  about hundreds of millions of dollars in potential liabilities

6  to basically hang over us, you know, we think as a maybe sort

7  of negotiating leverage tool.  And so it's -- it's really sort

8  of Metra's choice to have brought this action.  I don't know

9  that it's been very well complained about now having to

10  prosecute its own case.

11       THE COURT:  All right.  Mr. Hughes, what -- why

12  can't -- why doesn't Metra just voluntarily dismiss this which

13  would give you the ability presumably to replead at whatever

14  time makes sense based on what the STB does?

15       MR. HUGHES:  Your Honor, we saw that suggestion in

16  UP's status report and candidly doing that sort of tactics

17  smacks us a bit of -- as gamesmanship.  You know, we came

18  before the Court because we think an abeyance is the

19  appropriate pathway for this case to proceed.  If the Court

20  agrees with us, then we would proceed in that direction.  If

21  the Court disagrees and tell us that an abeyance is not

22  warranted in these circumstances, then we'll proceed with the

23  litigation as the Court directs.  The notion that we would

24  dismiss a case in order to accomplish that, again as I said,

25  strikes us as a little bit of unnecessary or undue gamesmanship

1  there.

2       I think it does, as the Court suggested, though, cut
3  against the notion that there is really a lot of substance to
4  UP's objection to there being a six-week delay having any real
5  mandatory effect.  We think it's appropriate for the Court to,
6  you know, agree with us that that is a reasonable decision for
7  us to hold the case until we see what the STB does.

8       You know, to my colleague's contention that it could
9  take longer, STB set a very aggressive schedule for briefing in
10 this case which is consistent with the chair's mandate that
11 decisions like this will issue much faster so I don't think we
12 have that broad timing concern.  I will say if the Court thinks
13 that we need to check in after or around September 3rd and if a
14 decision hasn't come that we consider what to do there, we'd
15 certainly be agreeable to that.

16      What I hear my colleague arguing, though, is a lot of
17 hypotheticals about what the STB might or might not do.  And as
18 I think the briefing is going to come in now, we're going to
19 have to be arguing about what the STB may or may not do and it
20 doesn't make sense in my view to shadowbox with what the Board
21 is going to do when we think we're going to find that out
22 within a couple weeks' time.

23      And at the end of the day, Metra has been clear.  What
24 we're seeking here is access to the lines on commercially
25 reasonable terms.  If STB provides that, the nature of this

1  case is going to materially change and whether or not any of

2  the claims go forward will materially change if STB provides

3  that nature of relief so that's why we think it's best

4  preserving party resources and judicial resources.  And again,

5  we're talking I think a period of about six to seven weeks

6  to -- when we anticipate having a decision and then being able

7  to provide the Court what we think is a meaningful pathway

8  forward that doesn't require us to do multiple rounds of

9  further supplementation or amendment of pleadings.  And again,

10  we don't see any real prejudice here suggesting that we

11  shouldn't especially when UP says that we could achieve the

12  same grounds through some sort of unilateral dismissal.

13          MR. LOSS-EATON:  Your Honor, may I quickly respond to

14  those points?

15          THE COURT:  Yes.

16          MR. LOSS-EATON:  Thank you.  And this is

17  Mr. Loss-Eaton again.

18          On the briefing schedule that the STB set, it

19  certainly was very aggressive and it was calculated such that

20  the agency could rule by the end of June.  That not having

21  happened and service having continued, I think unfortunately

22  all bets are off as far as what that schedule tells us.

23          As far as the hypotheticals about what the STB might

24  or might not do, we're talking about that here only to

25  underscore that anything the STB does cannot resolve or moot

1  this case. I don't think that the actual substantive

2  pleadings' briefing if we go forward now will be talking about

3  possible STB action at all because the whole point is whatever

4  the STB does, as Metra's case is currently constructed, the

5  same sets of issues will need to be decided. There might be

6  some nibbling around the margins about, you know,

7  forward-looking versus backward-looking relief but the actual

8  issues and claims will not change whatever the STB does so all

9  of that ultimately is going to be besides the point to the

10  merits of this case.

11  And finally in the same vein, I didn't hear Mr. Hughes

12  say anything about his damages claims which, at least as they

13  are currently pleaded, cannot be resolved by anything the STB

14  does. And if what Metra is actually saying is that it might

15  drop those claims if it wins at the STB, that's all the more

16  reason I think that it's not appropriate for this case just to

17  be hanging out in limbo while we wait to see what happens.

18  THE COURT: All right. I do think that there are

19  some -- it's not just -- it's not just a question of evaluating

20  legal arguments and what the effect of the legal arguments will

21  be, but there's also practical effects of -- that potentially

22  will flow from the STB's decisions. And it's clear to me that

23  regardless, the parties are going to likely have disputes about

24  the import of the STB ruling as a legal matter.

25  I don't think it makes sense to go forward with an

1   amended complaint, you know, sometime in the next few weeks

2   only to have an STB ruling a few weeks after that that at least

3   one of the parties is going to take the position, you know,

4   requires further amendment of the complaint, I don't -- I don't

5   think the continuance that the -- that Metra is seeking is

6   prejudicial in that regard.

7         The only one who is potentially -- well, Metra is, you

8   know, potentially going to be not only amending in a few weeks

9   but wanting to amend after the STB rules.  Given the timetable

10   that we appear to be on, I don't think that continuing the

11   matter for that brief a period works any prejudice on UP.  I

12   think that's reflected by UP's suggestion about dismissing the

13   case.

14         As that suggestion reflects, Metra could engineer --

15   no pun intended -- the same results by voluntarily dismissing

16   its complaint and -- without prejudice and refiling it down the

17   road after the STB rules.  I'm not going to -- well, it's not

18   my place to dismiss the case on that basis because it could

19   be what Metra is seeking to accomplish could be accomplished in

20   that manner.  There may be reasons that have not been fully

21   contemplated as to why that is or is not a good idea but I

22   think what we've got here is a situation where, in all

23   likelihood, if we just go forward with an amended complaint,

24   I'm going to be faced with the -- with another request to

25   further amend after whatever the STB rulings may be.  So I'm

1   going to grant the motion for a continuance.

2          That said -- and the parties addressed this without

3   prompting from the Court, but one of the questions that I did

4   have was if there is, you know, history here in terms of the

5   STB practice and timeliness in its compliance with its

6   statutory obligations to rule within particular time frames --

7   again, not surprisingly, the parties have offered different

8   perspectives on that question -- my view that there is no real

9   prejudice to the continuance that is sought predicated on an

10  STB ruling on September 3rd or by September 3rd does not extend

11  significantly past that date.  If, for some reason, the STB has

12  not ruled by September 3rd, we'll revisit the question of how

13  to proceed but we're not going to delay this matter

14  indefinitely.

15         UP is correct that Metra brought this suit so it's

16  Metra's obligation to move the suit forward.  That doesn't

17  mean, you know, handling the case in a manner that is not

18  efficient but it does mean that we're not going to indefinitely

19  delay progress in this case waiting for a ruling that we can't

20  control the timing of.

21         So I'm going to grant the motion or -- well, I'm going

22  to continue the matter, hold the matter in abeyance until the

23  STB rules or September -- a date within about seven days after

24  September 3rd in which case we can reconvene and discuss where

25  we need to go if we don't have the STB ruling.  Or, for that

1   matter, if we do have the STB ruling, we will revisit the

2   question of what makes sense to do.  But at that point, I would

3   expect that Metra would be in a position to file within a few

4   weeks an amended complaint that addresses fully whatever

5   significance Metra believes the STB ruling may have and we will

6   go from there.

7         So I'm going to continue this matter, hold the case in

8   abeyance until the STB rules or until a date that we will check

9   our calendars on right now when we can reconvene and discuss

10  what we should do in the absence of a STB ruling.  So the STB

11  ruling is due September 3rd.

12      (Pause.)

13        THE COURT:  September 11th, 9:00 a.m., is that

14  convenient for the parties?

15        MR. HUGHES:  Yes, your Honor.  For plaintiff Metra,

16  that's convenient.  This is Paul Hughes.

17        MR. LOSS-EATON:  This is Mr. Loss-Eaton.  Yes, your

18  Honor.  That works for Union Pacific as well.

19        THE COURT:  All right.  We'll set that for a status

20  hearing.  I found the parties' joint status report to be

21  helpful so I'm going to have the parties file in advance of

22  that hearing on the 11th a joint status report by the close of

23  business on September 8th and that will inform our discussion

24  on the 11th.

25        If we get a ruling before September 3rd, I would

1  expect Metra to advise the Court of that.  If it's

2  significantly in advance of the 3rd, we might move that

3  schedule up.  But regardless, if we get the -- at whatever

4  point we get the ruling assuming we get a ruling before the

5  11th, Metra is directed to advise the Court of that fact.

6         MR. HUGHES:  Yes, your Honor.  We'll notify the Court

7  as soon as we get a decision.  And if one comes before

8  September 3rd, we'll work with UP to provide a status report of

9  the parties' positions as to next steps.

10        THE COURT:  All right.  Anything else we need to

11  address this morning?

12        MR. HUGHES:  Not from plaintiff's perspective, your

13  Honor.  Thank you.

14        MR. LOSS-EATON:  Nothing from Union Pacific, your

15  Honor.  Thank you.

16        THE COURT:  All right.  That's how we'll proceed then.

17  We'll presumably reconvene on September 11th.  Thank you.

18        MR. BRAUN:  Thank you, your Honor.

19        MR. HUGHES:  Thank you.

20     (Concluded at 9:59 a.m.)

21                    *   *   *   *   *

22     I certify that the foregoing is a correct transcript

23  from the record of proceedings in the above-entitled matter.

24
   */s/Laura LaCien*                    *December 19, 2025*
25 Laura LaCien, CSR, RMR, CRR                Date
   Official Court Reporter